137 P.3d 423

**Bruce Byron BEDKE, Plaintiff–Respondent,**

v.

**PICKETT RANCH AND SHEEP CO., an Idaho Corporation, Defendant–Appellant.**

No. 31445.

Supreme Court of Idaho,
Boise, May 2006 Term.

May 25, 2006.

Don F. Pickett, Oakley, and Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, for appellant. Scott Smith argued.

Jeffrey E. Rolig, Twin Falls, for respondent.

EISMANN, Justice.

This is an appeal from a judgment granting the plaintiff an easement for a pipeline that crosses the defendant's property. We vacate a portion of the judgment and remand the case for further findings as to the location of the easement.

## I. FACTS AND PROCEDURAL HISTORY

Bruce Bedke owns a ranch in Cassia County. Adjoining his property to the east is a ranch owned by Pickett Ranch and Sheep Co. (Pickett Ranch), and adjoining it to the north is a ranch owned by Winecup, Inc. (Winecup). The Winecup ranch had previously been owned by Ray Bedke. On September 5, 1972, he formed Winecup, Inc., and transferred the ranch property into that corporation.

The City of Oakley owns a four-inch pipeline (Oakley Pipeline) that runs in a northerly direction across a portion of Pickett Ranch's land. In 1964, Pickett Ranch, Bruce Bedke, and Ray Bedke desired to connect a pipeline to the Oakley Pipeline to obtain water for stock watering. In order to obtain federal funding for the project, they executed a form contract provided by the United States Department of Agriculture and entitled a "Pooling Agreement." The Pooling Agreement provided that the parties would share the cost of installing approximately 1700 feet of 1¼-inch black "poly pipe" from the Oakley Pipeline to the point of diversion on the Picket Ranch property. The parties call this section the "upper reach" of the

pipeline. The Agreement also provided that Bruce Bedke and Ray Bedke would share the cost of installing poly pipe from Picket Ranch's point of diversion to their properties. They installed the pipeline to Bruce Bedke's property, where the pipeline teed running south to his place of use and north to Ray Bedke's property. The Bedkes used water from the pipeline on their respective ranches, but Pickett Ranch never took any water from the pipeline.

The pipeline required regular maintenance because of gophers chewing holes in it and root plugs [1] developing in it. Because it was buried about three feet underground, that maintenance required digging holes to access the pipe. For about thirty-six years, the parties apparently operated and maintained the pipeline without disputes. That changed in 2001 and 2002.

In 2001, the pipeline became plugged. Bruce Bedke's son Jared used a backhoe to dig various holes along the pipeline in order to locate where it was plugged and unplug it. When digging the holes, he piled dirt over part of Pickett Ranch's fence in a manner that would permit animals to walk over the fence. He also piled dirt near a gate, preventing the gate from opening. Once the pipeline was operating, refilling the holes was not a priority. A year later, they remained unfilled.

In 2002, Winecup replaced all or most of the upper reach of the pipeline with a new section of poly pipe. About thirty years earlier, Pickett Ranch had built a fence along the upper reach of the pipeline and, according to it, had located the fence so that most of the pipeline was north of (outside) the fence. It contends that Winecup installed the new section of pipeline south of (inside) the fence. Winecup did not contact Pickett Ranch prior to laying the new section of pipeline, nor did it repair the fence it cut when doing so.

Pickett Ranch reacted to these events by sending letters dated May 6, 2002, to both Winecup and Bruce Bedke. In the letters, Pickett Ranch stated it could not find any document granting an easement across its property for the pipeline and offered to grant Winecup and Bruce Bedke a revocable license to continue using the pipeline. It enclosed copies of the proposed license agreements. Bruce Bedke and Winecup responded by letter dated May 8, 2002, in which they enclosed a copy of the Pooling Agreement. By letter dated May 13, 2002, Pickett Ranch answered by asserting that the Pooling Agreement did not grant an easement and giving them until May 30, 2002, to sign the revocable licenses. Winecup signed the revocable license; Bruce Bedke did not. On May 31, 2002, Pickett Ranch mailed Bruce Bedke written notice that it was revoking permission for him or any of his agents, employees, or representatives to enter upon Pickett Ranch's property for any reason, including performing maintenance on the pipeline as a representative, employee, or contractor for Winecup.

On August 1, 2002, Bruce and Jared Bedke filed this lawsuit seeking damages for breach of the Pooling Agreement, damages for violating Idaho Code § 42–1102, and a declaration that they have an easement across Pickett Ranch's property for the pipeline. Pickett Ranch counterclaimed for damages and injunctive relief.

The case was tried to the district court sitting without a jury. The issues decided by the court were: (1) Did Bruce Bedke have an easement for the pipeline?; (2) Did Bruce Bedke abandon or forfeit the easement by his actions?; and (3) If Bruce Bedke did not have an easement, was Pickett Ranch entitled to injunctive relief? The court held that Bruce Bedke had a twenty-foot-wide easement for the existing pipeline; that the easement had not been abandoned or forfeited; and that Pickett Ranch was not entitled to injunctive relief. Pickett Ranch filed a motion asking the court to amend its findings of fact and conclusions of law to include a finding that the easement should be based upon the location of the original pipeline and not

---

1. The water for the pipeline comes from various springs. Apparently, seeds would get into the water at the springs, and then into the pipeline. When the water was turned off, the seeds would collect in low points and sprout. The roots would grow, into masses up to three or four feet long that would plug the pipeline.

upon the newly installed portion of the pipeline. The district court responded by finding that "any movement of the present pipeline from its original path was not a significant change, given the length of the pipeline, and its proximity to the roadway and fence." The district court also found that Bruce Bedke was the prevailing party and awarded him attorney fees under Idaho Code § 12–120(3) on the ground that the Pooling Agreement was a commercial transaction. Pickett Ranch then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the twenty-foot-wide easement was centered upon the existing pipeline rather than upon the original pipeline?

2. Did the district court err in holding that Bruce Bedke had not abandoned the easement for that portion of the pipeline that Winecup, Inc., had replaced?

3. Did the district court err in failing to make findings of fact as to whether Bruce Bedke's failure to fill the holes dug by Jared Bedke constituted a breach of the Pipeline Agreement?

4. Did the district court err in awarding Bruce Bedke attorney fees?

5. Is Bruce Bedke entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the District Court Err in Holding that the Twenty–Foot–Wide Easement Was Centered upon the Existing Pipeline Rather than upon the Original Pipeline?

■ The Pooling Agreement did not specify the location or width of the easement for the pipeline. The district court found that the width of the easement was twenty feet, with ten feet on each side of the pipeline. On appeal, Pickett Ranch does not challenge the district court's finding that Bruce Bedke has an easement for the pipeline and that the easement is twenty feet in width. The district court also found that the existing pipeline was the centerline of the easement.

Pickett Ranch challenges that finding. It contends that the original pipeline should be the centerline of the easement.

■ The location of the easement depends upon the intention of the parties and the circumstances in existence at the time the easement was given and carried out. *Argosy Trust ex rel. Its Trustee v. Wininger,* 141 Idaho 570, 114 P.3d 128 (2005). In 1964, the parties obviously intended the easement to be where the pipeline was actually laid. *See, Hughes v. Fisher,* 142 Idaho 474, 129 P.3d 1223 (2006). No evidence was offered indicating that they intended the easement to be somewhere else.

In its answer, Pickett Ranch alleged that the new pipeline was in a different location from the original pipeline. At trial, Pickett Ranch offered evidence that the original pipeline was located ten to fifteen feet north of its fence, and that the new pipeline was located south of the fence. Photographs of the ground disturbance show that the new pipeline was laid at least five to ten feet south of the fence. That evidence was uncontroverted.

In its initial opinion, the district court did not address the issue of whether the new pipeline is located within the easement for the original pipeline. Pickett Ranch filed a motion asking the district court to amend its findings of fact and conclusions of law in order to address that issue. The district court denied Pickett Ranch's motion, but did add as an additional finding of fact:

This Court finds any movement of the present pipeline from its original path was not a significant change, given the length of the pipeline, and its proximity to the roadway and fence. While it may have been wrong to move the pipeline from its original position, such action was done for the purpose of repairing and maintaining the pipeline, and did not destroy the easement.

■ Bruce Bedke has no right to change the location of the easement or increase its width. *Argosy Trust ex rel. Its Trustee v. Wininger,* 141 Idaho 570, 114 P.3d 128 (2005). As we stated in *Aztec Ltd., Inc. v.*

*Creekside Investment Co.*, 100 Idaho 566, 569, 602 P.2d 64, 67 (1979), "An increase in width does more than merely increase the burden upon the servient estate; it has the effect of enveloping additional land." The same is true with respect to the change in the location of an easement.

The evidence at trial was uncontroverted that the new pipeline was installed outside the original easement. Neither party provided evidence as to the precise location of either the original pipeline or the new pipeline. In its findings of fact, the district court did not address the location of either pipeline. If the new pipeline is outside the twenty-foot-wide easement, then it is a significant change. Indeed, the district court cannot know whether the change was significant (outside the boundary of the easement) without making findings as to the locations of the respective pipelines. We therefore vacate that portion of the judgment stating that the easement is "located upon and on each side of the existing, operating, buried pipeline."

The district court also erred in not specifying the location of the easement. The judgment identified the easement as follows:

> The twenty-foot easement recognized by this Amended Judgment is located upon and on each side of the existing, operating, buried pipeline running from an existing water line belonging to the City of Oakley, Idaho, which said pipeline runs in a northwesterly direction to a point near an existing fence line that runs generally parallel to the north border of defendant's property; then running in a westerly direction along said fence line, then running in a southwesterly direction to the common boundary between plaintiff's and defendant's properties.

That description is not sufficient.

■ A judgment determining the existence of an easement across the land of another must set forth the location, width, and length of the easement in order that conflicts between landowners may be avoided. *Id.; Hall v. Taylor*, 57 Idaho 662, 67 P.2d 901 (1937). In *Kosanke v. Kopp*, 74 Idaho 302, 261 P.2d 815 (1953), we held insufficient a judgment for road easements that set forth their width but described their loca-

tions as running from a designated county road in a generally southerly direction across designated sections. We noted that while the locations of easements were "reasonably well defined and marked upon the ground," "[n]o points of origin, courses, distances or destinations are set forth with such particularity that each highway may be identified and located by reference to the judgment." 74 Idaho at 307, 261 P.2d at 818. Likewise, in *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961), we held insufficient a judgment describing an easement at the concrete driveway between the parties' houses.

This case must therefore be remanded to the district court to make findings as to the precise location of the original pipeline easement. The court must then make findings as to whether the new pipeline is located in that easement. It may take further evidence in order to make the required findings. *Id.*

**B. Did the District Court Err in Holding that Bruce Bedke Had Not Abandoned the Easement for that Portion of the Pipeline that Winecup, Inc., Had Replaced?**

■ Pickett Ranch acknowledges in its brief, "Mere nonuse of an easement generally does not effect an abandonment." It then argues that Bruce Bedke abandoned the easement for the original location of the upper reach of the pipeline by nonuse. It points out that the original pipeline was disconnected and can no longer divert water. It was not Bruce Bedke who disconnected it, however. It was Winecup. The district court's finding that Bruce Bedke had not abandoned the original easement for the upper reach of the pipeline is not clearly erroneous.

**C. Did the District Court Err in Failing to Make Findings of Fact as to Whether Bruce Bedke's Failure to Fill the Holes Dug by Jared Bedke Violated the Easement and the Pooling Agreement?**

■ While performing maintenance on the pipeline, Jared Bedke used a backhoe to dig several holes in Pickett Ranch's land. The

undisputed evidence is that he delayed approximately one year in filling in those holes. On appeal, Pickett Ranch asks, "It is respectfully requested that the district court's judgment be reversed on the basis that it failed to make a finding concerning whether Bedke's maintenance practices were unlawful."

■ The owner of an easement has the right to enter the servient estate in order to maintain, repair, or protect the easement. *Drew v. Sorensen,* 133 Idaho 534, 989 P.2d 276 (1999); *Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 808 P.2d 1289 (1991). The easement owner may do so, however, only when necessary and in a reasonable manner as not to increase needlessly the burden on the servient estate. *Id.* The district court did not make any findings as to whether Bedke performed the maintenance of the pipeline in a reasonable manner or whether he needlessly increased the burden on the servient estate. The district court's findings regarding the holes dug by Jared Bedke were as follows:

14. During the year 2001, some large holes were discovered on the land owned by Pickett Ranch & Sheep Co., which had been made with a backhoe.

15. Although the Bedke family promised to refill the holes, the holes were left empty.

16. The holes posed a hazard to animals and to people.

17. A gate could not function properly because of the dirt/holes.

■ Following the issuance of the district court's findings of fact, Pickett Ranch filed a motion to amend the court's findings of fact and conclusions of law. It did not request any further findings regarding Bedke's maintenance practices. The requested amendments to the findings of fact dealt with the relocation of the upper reach of the pipeline. Rule 52 of the Idaho Rules of Civil Procedure provides, "No party may assign as error the lack of findings unless the party raised such issue to the trial court by an appropriate motion." Because Pickett Ranch did not raise to the district court the alleged lack of findings regarding Bedke's maintenance practices, it cannot assign the lack of findings on that issue as error on appeal.

**D. Did the District Court Err in Awarding Bruce Bedke Attorney Fees?**

■ The district court found that the central issues in this case were whether Bruce Bedke had an easement for the pipeline and whether Pickett Ranch could deny him access to maintain and repair the pipeline. It determined that Bedke was the prevailing party because he prevailed on these two issues. Finally, it held that the Pooling Agreement was a commercial transaction and that Bedke was therefore entitled to an award of attorney fees under Idaho Code § 12–120(3).

Pickett Ranch does not challenge the determination that Idaho Code § 12–120(3) applies to this case. Instead, it challenges the finding that Bruce Bedke is the prevailing party and the reasonableness of the attorney fee award. We are vacating the district court's finding that Bedke has an easement for the location of the new section of pipeline. We therefore also vacate the award of attorney fees. The final resolution of the location of the easement could impact the determination of whether Bedke is the prevailing party.

**E. Is Bruce Bedke Entitled to an Award of Attorney Fees on Appeal?**

Bruce Bedke requests an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3). Because we are vacating a portion of the judgment and remanding this case for further findings of fact, there is not yet a prevailing party. In that situation we would ordinarily permit the trial court to award attorney fees for the appeal, if it determined on remand that Bedke was the prevailing party. *Lexington Heights Dev., LLC v. Crandlemire,* 140 Idaho 276, 92 P.3d 526 (2004). In order to do so, however, we must first determine that Idaho Code § 12–120(3) provides for the award of attorney fees in this case.

■ Attorney fees are not appropriate under Idaho Code § 12–120(3) unless the commercial transaction is integral to the

claim and constitutes the basis upon which the party is seeking recovery. *C & G, Inc. v. Rule,* 135 Idaho 763, 25 P.3d 76 (2001). Bruce Bedke argues that the gravamen of this lawsuit is the parties' rights under the Pooling Agreement, which was a commercial transaction. The central issues in this case were: (a) whether the Pooling Agreement granted an easement to Bruce Bedke or some lesser right; (b) if it granted an easement, whether Bruce Bedke had by his conduct abandoned or lost the right to use the easement, or whether it had expired; and (c) if it granted an easement, the width and location of the easement. In *C & G, Inc. v. Rule,* 135 Idaho at 769, 25 P.3d at 82, we addressed the issue of whether a dispute as to whether a document constituted a conveyance of property or the grant of an easement constituted a "commercial transaction" under Idaho Code § 12–120(3). We held that it did not.

The present action is primarily a dispute over whether the properties in question were conveyed in fee simple or as easements. As such, this case does not fall within the meaning of a commercial transaction as defined in I.C. § 12–120(3). The present situation is instead more analogous to situations involving the determination of property rights where this Court and the Court of Appeals have uniformly denied an award of attorney fees.

Of the cases in which we have dealt with whether a commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover, *C & G, Inc. v. Rule* is the one most analogous to this case. We therefore hold that Idaho Code § 12–120(3) does not provide a basis for awarding attorney fees in this case.

## IV. CONCLUSION

We vacate that portion of the judgment stating that Bruce Bedke's easement is "located upon and on each side of the existing, operating, buried pipeline." We also vacate the awards of court costs and attorney fees. We remand this case to the district court for further proceedings consistent with this opinion. Because each party prevailed in part on appeal, we do not award costs on appeal.

Chief Justice SCHROEDER and Justices TROUT, BURDICK and JONES concur.

