# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 32847

DOUG CANNON and CAREY CANNON, )
husband and wife, BEVERLY L. HINRICHS, )
and SONJA MORENO, )
                               )
               **Plaintiffs-Appellants-Cross** )
               **Respondents.** )
v. )
                               )
KENDON H. PERRY and JUDY C. )
BROWN-PERRY, husband and wife, and the )
unknown heirs and/or devisees of the )
above named parties, if deceased, and any )
and all other unknown parties claiming an )
interest in and to the following described real )
property situated in Kootenai County, State )
of Idaho, to-wit: 4801Woodside Avenue, )
Coeur d'Alene, Idaho, )
                               )
               **Defendants-Respondents-Cross** )
              **Appellants.** )
                               )
                               )
                               )

Coeur d'Alene, September 2007

2007 Opinion No. 106

Filed: October 19, 2007

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. The Honorable John P. Luster, District Judge.

The decision of the district court is <u>vacated and this case is remanded</u>.

Greg D. Horne, Coeur d'Alene, for Appellant and Cross Respondents.

Ramsden & Lyons, Coeur d'Alene, for Respondent and Cross Appellants, April Lindscott, argued.

---

JONES, W., Justice.

Plaintiffs Doug and Carey Cannon, Sonja Moreno, and Beverly Hinrichs filed suit against Kendon and Judy Perry seeking specific performance of a contract for the sale of real property. The district court granted summary judgment in favor of the Perrys, and Moreno and Hinrichs appealed.

The Perrys owned a home at 4801 Woodside Lane, Coeur d'Alene, Idaho. The Cannons signed a one-year lease on the property with an option to buy commencing on November 1, 2003. The written agreement provided that the Cannons could purchase the property for $165,500, less a credit for a percentage of rent paid, at any time prior to November 1, 2004. The Cannons moved into the house and began paying rent.

In September 2004 the Cannons informed the Perrys that they wanted to purchase the house but were having difficulty obtaining financing. It was decided that Sonja Moreno, a friend of the Cannons, would purchase the property on their behalf. The Cannons would continue renting from Moreno until they could purchase the property themselves. In October 2004 Moreno and the Perrys executed a written agreement under which Moreno would purchase the property for $163,295, the same price that the Cannons would have paid under their option. The contract stated that the closing date should be November 1, 2004 or sooner.

Moreno was unable to obtain financing before November 1. The Perrys verbally agreed to extend the closing date to on or around November 30. During that time, the parties also agreed that the buyer would change to Beverly Hinrichs, a friend of Moreno. Moreno and Hinrichs intended to hold the property as partners. Moreno and Hinrichs sent a note to the title company on November 8 informing them that the buyer would change from Moreno to Hinrichs, but no new written agreement was executed at that time.

On December 5 the Perrys sent an email to the Cannons indicating that the delay was becoming excessive and requesting that a firm closing date be set by December 7. On December 7 Hinrichs and the Perrys executed an instrument entitled "Addendum #1" (the Addendum) claiming to be "an addendum to the sales contract dated 11/29/04 between Kendon H. Perry as Seller and Beverly Hinrichs as Buyer." [Underlining indicates handwritten portions]. The instrument, which was drafted by Kendon Perry, stated that the parties would "extend the deadline for closing to occur no later than the end of December 16th, 2004."

Closing did not occur on December 16 because Hinrichs' financing was not yet finalized. Both parties were frustrated that the lender was moving so slowly. However, on that day the

2

Perrys executed a written "Purchase and Sell Agreement" (the Agreement) and faxed it to Moreno, who was authorized to sign on behalf of Hinrichs. The instrument named Hinrichs as the buyer and specified "Escrow to close on or before December 30, 2004." Although it was signed on December 16, the space next to each party's signature bore the typewritten date "11/29/2004." Neither party drafted the document; apparently it was drafted by the lender. The dates were inserted before either party received the document.

The next day, December 17, the Perrys visited the house to collect the rent. According to the Cannons, the Perrys entered the house and saw many of the improvements the Cannons had made. Later that day the Perrys sent a letter to Hinrichs and the Cannons rescinding all previous agreements to sell the property and expressing their intention to list the property for sale through a real estate broker. The lender wrote the Perrys, reminding them that they were "under contract through the 30th of December" and urging them not to list the property. The Cannons also wrote to assure the Perrys that the process was on track for closing to occur by December 30. The Perrys, however, avoided contact with the title company and the lender and refused to take any further action towards closing.

The closing documents were prepared by December 30. Moreno signed on Hinrichs' behalf.[1] The Perrys never signed the closing documents. Instead, on approximately January 1, 2005, the Perrys listed the property for sale with a broker, and within two days accepted an offer for $194,500.

The Cannons, Moreno and Hinrichs filed a complaint alleging breach of contract and wrongful eviction. The Perrys counterclaimed for damages. Both sides moved for summary judgment with respect to the breach of contract claim. The district court granted partial summary judgment in favor of the Perrys, concluding that the time for performance under the contract, as modified by the Addendum, unambiguously expired on December 16, and that the Perrys were therefore free to rescind on December 17. The district court awarded the Perrys attorney fees as to Moreno and Hinrichs but not as to the Cannons. Moreno and Hinrichs appealed. The Perrys cross appealed with respect to the district court's refusal to award attorney fees against the Cannons.

---

[1] Due to problems with Moreno's signature the closing documents were not properly executed on Hinrichs' behalf until January 3. Neither party has raised any issues relating to Hinrichs' failure to timely execute the documents.

On appeal from a grant of summary judgment, this Court employs the same standard as that used by the trial court originally ruling on the motion. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

The fact that both parties moved for summary judgment does not change the applicable standard of review, nor does it necessarily establish that there is no genuine issue of material fact. *Shawver*, 140 Idaho at 360, 93 P.3d at 691. Each party's motion must be evaluated on its own merits. *Id*. The evidence is construed and all reasonable inferences are drawn in favor of the non-moving party with respect to each motion. *Garner v. Bartschi*, 139 Idaho 430, 433, 80 P.3d 1031, 1034 (2003).

The motions for partial summary judgment related only to the breach of contract claims. The district court correctly determined that the Cannons were not in a contractual relationship with the Perrys at the time of the alleged breach because the Cannons' option was either discharged or surrendered when they agreed to have Moreno purchase the property in their stead. Although the contract with Moreno was rescinded when the parties agreed to substitute Hinrichs as the purchaser, the record reflects that Moreno and Hinrichs had entered into a partnership to purchase the property to rent to the Cannons with the intent of eventually selling to the Cannons. Hinrichs and Moreno were, therefore, in a contractual relationship with the Perrys by virtue of their partnership.

For purposes of this appeal it is undisputed that Hinrichs and the Perrys formed a valid contract.[2] The dispute involves one of its terms, namely, when performance must occur. The Agreement states that closing must occur by December 30. The Addendum purports to "extend" that date to December 16. The issue is whether the Addendum is ambiguous on its face so that the court may look to extrinsic evidence under the parol evidence rule.

---

[2] The Perrys contended below that the contract was unenforceable under I.C. § 32-912 because it was not signed by Judy Perry. The statute requires that an agreement for the sale of community real property be signed by both husband and wife. The district court found that the issue involved a material question of fact. Neither party has challenged this determination on appeal.

Interpretation of unambiguous language in a contract is a question of law. *Shawver*, 140 Idaho at 361, 93 P.3d at 692. Interpretation of an ambiguous contract is a question of fact. *Id.* Whether a contract is ambiguous is a question of law. *Id.*

The district court concluded that it was not entitled to look at extrinsic evidence because the documents were not ambiguous in any way. The documents suggest on their face that the parties on November 29 set a closing deadline of December 30, then on December 7 "extended" that deadline to December 16. Although the parties could have changed the closing deadline by use of an addendum, the use of the word "extended" in the December 7 Addendum creates an ambiguity as to what the parties actually intended. The district court incorrectly concluded that there was no facial ambiguity. Clearly, the Addendum is in direct contrast to the Agreement dated November 29.

Under the parol evidence rule, when a contract has been reduced to a writing that the parties intend to be a final statement of their agreement, evidence of any prior or contemporaneous agreements or understandings which relate to the same subject matter is not admissible to vary, contradict, or enlarge the terms of the written contract. *Simons v. Simons*, 134 Idaho 824, 828, 11 P.3d 20, 24 (2000). Parol evidence, however, is admissible to establish "any fact that does not vary, alter, or contradict the terms of the instrument or the legal effect of the terms used." 29A Am. Jur. 2d Evidence § 1106 (1994); *accord* Restatement (Second) of Contracts § 218 (1979). An integrated writing proves the terms of the contract; it does not "establish fictitious events." Restatement (Second) of Contracts § 218 cmt. a. As one court has noted,

> The authorities are practically unanimous to the effect that parol evidence is competent to establish the true date of execution and delivery of the contract regardless of the fact that it differs from the date shown in the body of the contract. While the date shown in the contract may be presumed to be the date of execution, this presumption is rebuttable and parol evidence is acceptable for this purpose.

*Olsen v. Reese*, 200 P.2d 733, 737 (Utah 1948); *accord* 29A Am. Jur. 2d Evidence § 1114 (1994) (allowing the use of parol evidence to contradict the stated date of execution "even as to instruments which are required by statute to be in writing," unless the date is a "vital part of the instrument" the changing of which would change the rights of the parties to the instrument); *cf. Rupert Nat'l Bank of Rupert v. Ins. Co. of N. Am. of Philadelphia*, 40 Idaho 530, 535, 234 P. 465, 467 (1925) ("[I]t is always competent to show by parol evidence that the date inserted in the

instrument was not the date of delivery."). Evidence that the Agreement was signed on December 16 rather than November 29 does not tend to vary any term of the contract; it merely establishes a fact. The district court erred by failing to consider this evidence. The grant of summary judgment in favor of the Perrys must be vacated.

It is clear that the District Court's conclusion with respect to I.C. § 32-912, as well as this Court's previous holdings, precludes summary judgment for Hinrichs as well. Neither party, therefore, is entitled to summary judgment. The case must be remanded to the district court for further proceedings.

The district court awarded the Perrys attorney fees against Hinrichs and Moreno under I.C. § 12-120(3), which provides for the prevailing party "in any commercial transaction" to recover reasonable attorney fees. It refused to award attorney fees under the statute as against the Cannons because the transaction involving them was "clearly not a commercial transaction." The district court apportioned the fees by allocating half against Hinrichs and half against Moreno.

Hinrichs and Moreno appealed, arguing that the award of attorney's fees was barred because the transaction was not a commercial transaction since the property was to be used for residential purposes and Hinrichs and Moreno entered the transaction, not as commercial investors, but as friends attempting to help the Cannons. The Perrys filed a cross appeal arguing that attorney's fees should have been awarded against the Cannons pursuant to a provision in the lease/option agreement.

Since neither party is entitled to summary judgment, there is not yet a prevailing party. That determination will depend on the outcome on remand. The grant of attorneys' fees below is therefore vacated. *Bedke v. Pickett Ranch and Sheep Company*, 143 Idaho 36, 41, 137 P.3d 423, 428 (2006). Since, however, the case is remanded for trial and presumably there will be a prevailing party at some point, this Court will consider the issues raised regarding attorneys fees.

Commercial transactions are "all transactions except transactions for personal or household purposes." I.C. § 12-120(3). The statute does not require that there be a contract. *Blimka v. My Web Wholesaler, L.L.C.*, _____ Idaho _____ (2007, Opinion No. 17). There is no dispute that the Cannons' involvement in these transactions was for personal or household purposes. Although Hinrichs and Moreno contend that they were acting only as friends of the Cannons, each of them testified in their depositions that they were buying the property for

6

investment purposes. The arrangement was not a gift to the Cannons; Hinrichs and Moreno would collect rent and ultimately sell it to the Cannons at an appraised price. The district court correctly found, therefore, that the transaction was a commercial transaction with respect to Hinrichs, Moreno and the Perrys.

The lease/option agreement between the Cannons and the Perrys provided for attorneys fees as follows:

> Attorneys' Fees. In the event an attorney is employed to enforce the provisions of this Agreement, or there is any litigation arising out of any disagreement over the performance of this Agreement, the party found to be in default herein agrees to pay the prevailing party's reasonable attorneys' fees and costs of the enforcement of action in addition to any other award of the court.

The contract awards attorneys fees against "a party found to be in default" of the contract. The district court correctly recognized that neither party was in default of the lease/option contract. Therefore, no attorneys' fees are authorized under the lease/option contract.

The district court erred by failing to consider evidence that the Agreement was signed on December 16 even though it was dated November 29. Since the Agreement and Addendum are ambiguous on their face, in that the Agreement establishes a closing date of December 30, 2004 while the Addendum purports to "extend" that date to December 16, the case must be remanded to the district court for trial of the factual issue of the parties' intent. At trial the district court must consider extrinsic evidence of intent in order to resolve the ambiguity.

The award of attorney fees is vacated since neither party is a prevailing party at this time. No attorney fees are awarded on appeal. At the time any party becomes a prevailing party, attorney fees may be awarded under I.C. § 12-120(3) as between Hinrichs and Moreno and the Perrys, but not as to the Cannons. Costs on appeal are awarded to Hinrichs and Moreno.

Chief Justice EISMANN, Justices BURDICK, J. JONES and TROUT, J. Pro Tem, **CONCUR**.