IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37244

| | | |
|---|---|---|
| EILEEN ANN McDEVITT, | ) | |
| | ) | |
|    Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Boise, May 2011 Term |
| | ) | |
| SPORTSMAN'S WAREHOUSE, INC., | ) | 2011 Opinion No. 65 |
| | ) | |
|    Defendant-Respondent, | ) | Filed: May 27, 2011 |
| | ) | |
| and | ) | Stephen W. Kenyon |
| | ) | |
| CANYON PARK MANAGEMENT I, INC., | ) | |
| an Idaho corporation; CANYON PARK, | ) | |
| LLC, an Idaho limited liability company; | ) | |
| CANYON PARK DEVELOPMENT, LLC, | ) | |
| an Idaho limited liability company; | ) | |
| NEILSON & COMPANY, LLC an Idaho | ) | |
| limited liability company; ECKMAN | ) | |
| MITCHELL CONSTRUCTION, LLC, a | ) | |
| Utah limited liability company; JOHN DOE | ) | |
| and JANE DOE, husband and wife, I | ) | |
| through X, and BUSINESS ENTITIES. I | ) | |
| through X. | ) | |
| | ) | |
|    Defendants. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The decision of the district court granting summary judgment is <u>affirmed</u>. No attorney's fees on appeal are awarded. Costs are awarded to Respondent.

Jeffrey J. Hepworth, P.A. & Associates, Twin Falls, for Appellant. Jeffrey J. Hepworth argued.

Carey Perkins, Idaho Falls, for Respondent. Jeremy D. Brown argued.
_____

W. JONES, Justice

## I. NATURE OF THE CASE

Eileen Ann McDevitt tripped and fell on a recessed irrigation box on the sidewalk outside Sportsman's Warehouse ("Sportsman's"), located in a shopping center in Twin Falls, Idaho. She

brought suit against Sportsman's and several other defendants to recover for her injuries. The district court granted summary judgment to Sportsman's, finding that as a tenant in a multi-tenant shopping center, Sportsman's owed no duty to invitees to keep the sidewalk that was not part of its leased premises reasonably safe or to warn of hazards. McDevitt appealed to this Court. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

McDevitt alleges that on December 21, 2005, she slipped or tripped over a recessed irrigation box on the sidewalk outside of Sportsman's Warehouse in Twin Falls, Idaho. Sportsman's is located in the Canyon Park East Shopping Center. Sportsman's entered into a lease ("the Lease") with Canyon Park, L.L.C. ("Canyon Park") on April 17, 2003. The Lease identifies Canyon Park as the landlord and Sportsman's as the tenant. It also identifies the "Premises" to be leased by referencing Exhibit B attached to the Lease. Exhibits B-1 and B-2 to the Lease identify the "Premises" as the 45,475 square feet indicated in that map of the shopping center, contained in Exhibit B-1, as Building 6.

Pursuant to the Lease, the base rent was to be calculated "in an amount equal to the actual square footage of the Building."[1] Tina Luper, a representative of Neilson and Company, L.L.C. ("Neilson and Company") who contracted with Canyon Park to manage the common areas of the shopping center, testified in her deposition that the square footage for Sportsman's was calculated "within the exterior walls" of the building, because that was the gross leasable area as identified in the Lease. The Lease stated that Sportsman's was responsible for construction of the building, while Canyon Park was responsible for "Concurrent Site Improvements," identified in Exhibit F of the Lease to include paving the portions of the "Premises" and "Shopping Center" designated for pedestrian travel. The Lease also designates that Canyon Park assumes the duty to maintain the common areas:

> Landlord shall operate, maintain, repair, and manage the Premises and Common Areas, including without limitation (a) repairing and replacing all structural elements of the Building, which specifically, without limitation, includes the roof of the Building, and (b) cleaning, lighting, repairing, painting, maintaining, and replacing all improvements on the Common Areas including snow removal, parking lot improvements and replacement, landscaping and security, such that at all times during the Term of this Lease, the Common Areas are in a good and safe condition, as is customary for other first class shopping centers similarly situated.

---

[1] Exhibit C to the Lease also contained a Schedule of Base Rent, which states that the Annual Base Rent is "to be amended to reflect actual square footage of the Building."

2

The Lease is subject and subordinate to the Declaration of Conditions, Restrictions and Easements recorded by Canyon Park on May 17, 2001 (the "CC&Rs").

The CC&Rs define a "Common Area" as "all of the land area and improvements thereon which are located outside of the Buildings, including but not limited to, landscaped and hardscape areas, and all Parking Areas." They go on to state that "Declarant [Canyon Park] shall maintain, repair and replace or cause to be maintained, repaired or replaced all Improvements in the Common Area or portions thereof," including "maintenance of all Parking Areas, service drives and walkways . . . including the paving and repairing or resurfacing or replacement of such areas when necessary." Under the CC&Rs, Sportsman's, along with all the other tenants in the shopping center, was granted a non-exclusive easement to use the common areas for pedestrian and vehicular access. Sportsman's was also permitted to install kiosks, merchandising carts, stands, booths, or other similar enclosures for retail use in the area owned by Canyon Park.

Idaho Scapes, Inc. ("Idaho Scapes") was hired by Canyon Park to install a sprinkler irrigation system in front of Sportsman's. It installed a green plastic valve box (the "irrigation box") in the location where a planter box was allegedly supposed to be installed later by another contractor. However, the planter box was never installed. Glenn Anderson and his company GA Architects prepared all the plans for design of the building. Mr. Anderson testified that "the developer," who he understood to be the owner of the shopping center,[2] designed the location of the irrigation box in the sidewalk. Canyon Park admitted in answers to interrogatories that the contractor Eckman & Mitchell Construction, L.L.C. ("Eckman & Mitchell") was responsible for the construction of the sidewalk around the irrigation box. At some point the irrigation box sunk about one inch below the sidewalk level.

During the grand opening of Sportsman's, there was a hot dog stand located on the sidewalk. Sportsman's also occasionally used the sidewalk for displays. Canyon Park entered into a contract with Neilsen and Company for the management of the common areas of Canyon Park East Shopping Center.[3] Tina Luper, Neilson and Company's representative, testified that in order for Sportsman's to have a display or a sale on the sidewalk, the manager of Sportsman's

---

[2] Mr. Anderson, the principal architect on the project, was asked in his deposition: "Who are you referring to when you refer to the word 'developer'?" He answered "I can't say who that was at this point. Whoever was the owner of the property and the owner of the center."

[3] As a note of clarification, Canyon Park I, L.L.C., and not Canyon Park, entered into this contract. As explained by Tina Luper in her deposition, Canyon Park L.L.C. transferred its ownership interest to Canyon Park Development, L.L.C. and Canyon Park I, L.L.C. around 2004. The Canyon Park entities are referred to collectively as "Canyon Park" in this Opinion, as they were in the parties' briefing.

was required to contact Ms. Luper, identify the dates that he wanted to use the sidewalk and receive final approval from Ms. Luper, which was typically granted. Diane Stevens, another employee of Neilsen and Company, confirmed that Sportsman's was required to seek approval before using the sidewalk for displays. She also confirmed that there was nothing specified in the Lease that made Sportsman's responsible for the sidewalk outside of its store. Canyon Park owned the sidewalk, and Neilsen and Company, having contracted with Canyon Park to manage the common areas of the shopping center, was responsible for maintenance of the sidewalk. Ms. Luper and Ms. Stevens conducted several inspections of the common areas before McDevitt's fall. Ms. Stevens stated that during one of her inspections she noticed that the box was lower than the sidewalk.

McDevitt filed a Complaint and Demand for Jury Trial on December 20, 2007, against several defendants, including three Canyon Park entities (Canyon Park Management I, Canyon Park, L.L.C. and Canyon Park Development, L.L.C., collectively referred to herein as "Canyon Park"), Eckman & Mitchell, Neilson and Company, and Sportsman's, seeking to recover damages for her personal injuries. Sportsman's moved for summary judgment on September 25, 2009, arguing that McDevitt had not presented sufficient evidence to show that Sportsman's had a duty to McDevitt to make the sidewalk safe or to warn of dangerous conditions on the sidewalk. The district court granted summary judgment to Sportsman's, finding that it did not owe a duty to keep the sidewalk safe or to warn of dangers, and that even if it created the hazard on the sidewalk, any duty regarding that hazard terminated when the lease period commenced or when Canyon Park became aware of the hazard and failed to repair it. McDevitt filed a motion for reconsideration, and after oral argument, the district court issued a ruling from the bench denying the motion. The court entered an order dismissing all other defendants pursuant to a settlement with McDevitt. Final judgment was entered by the court dismissing the complaint against the only remaining defendant, Sportsman's, and McDevitt timely appealed from that judgment.

### III. ISSUES ON APPEAL

1.   Whether the district court erred in finding as a matter of law that Sportsman's, a tenant in a multi-tenant shopping mall, did not owe its invitees a duty to keep the sidewalk abutting its property safe or to warn of hazards on it.

2.   Whether either party is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court reviews a motion for summary judgment using the same standard employed by the district court in deciding the motion. *Stoddart v. Pocatello Sch. Dist. #25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*; I.R.C.P. 56(c). The existence of a duty is a question of law over which this Court exercises free review. *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999).

Interpretation of unambiguous language in a contract is an issue of law. *Cannon v. Perry*, 144 Idaho 728, 731, 170 P.3d 393, 396 (2007). Interpretation of an ambiguous contract is a question of fact. *Id.* Whether a contract is ambiguous is an issue of law. *Id.*

## V. ANALYSIS

The elements of a negligence action are: (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *McKim v. Horner*, 143 Idaho 568, 572, 149 P.3d 843, 847 (2006). The dispute in this case revolves around whether Sportsman's owed a duty to invitees such as McDevitt to keep the sidewalk outside Sportsman's safe or to warn of any hazards on it.

**A.    The District Court Did Not Err in Granting Summary Judgment to Sportsman's Because as a Matter of Law Sportsman's Did Not Owe a Duty to McDevitt**

> *1.    Sportsman's Did Not Owe a Duty to McDevitt Because The Sidewalk Was Not Part of the Leased Premises and Sportsman's Did Not Have Control of It*

> > a.    <u>The sidewalk was not a part of the leased premises</u>

Generally, "owners and occupiers of land will be under a duty of ordinary care under the circumstances towards invitees who come upon their premises." *Harrison v. Taylor*, 115 Idaho 588, 596, 768 P.2d 1321, 1329 (1989). A tenant is an occupier of land, and therefore Idaho courts have held that a tenant has a duty to keep its premises reasonably safe for invitees. *Johnson v. K-Mart Corp.*, 126 Idaho 316, 317, 882 P.2d 971, 972 (Ct. App. 1994). In *Johnson*, the plaintiff slipped and fell on ice in the K-Mart parking lot. *Id.* at 316–17, 882 P.2d at 971–72. The Court of Appeals looked to the lease agreement to determine whether K-Mart, as a lessee, had a duty to keep the parking lot reasonably safe. *Id.* at 317–18, 882 P.2d at 972–73. The court found that the parking lot was part of the leased premises, and therefore K-Mart had a duty to maintain it in a reasonably safe condition for its invitees. *Id.* at 318, 882 P.2d at 973. The court also noted that although under the lease the landlord expressly covenanted to maintain the

5

parking lot, "this covenant did not operate to absolve K-Mart of its common-law duty to maintain its leased premises." *Id.* The *Johnson* case stands for the proposition that a tenant has an absolute duty to keep its leased premises safe.

The interpretation of an unambiguous lease is an issue of law freely reviewed by this Court. *Cannon*, 144 Idaho at 731, 170 P.2d at 396. The determination of whether a lease is ambiguous is also an issue of law freely reviewed. *Id.* At issue here is what the Lease states is part of Sportsman's "leased premises." The Lease states that the portion of the shopping center that will be "the Premises" is to be depicted on Exhibit B. Exhibit B-1 depicts a map of the Canyon Park East Shopping Center, with the "Premises" labeled as Building 6 and listed as 45,475 square feet. In determining whether a contract is ambiguous, this Court ascertains whether the contract is reasonably subject to conflicting interpretation. *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 201, 899 P.2d 411, 414 (1995). McDevitt suggests that a reasonable interpretation of "Premises" in the Lease includes the sidewalk. Her only evidence in support of this interpretation is that the first page of the Lease states that "Tenant desires to construct a building of approximately 45,250 square feet" and that in Exhibit B-1 of the Lease, the Premises is listed as 45,475 square feet, leading to an interpretation that the extra 225 feet must have meant that the Premises included the sidewalk. There was no evidence that the area of the sidewalk actually was 225 square feet. Sportsman's explains this discrepancy in square footage with other language in the Lease, specifically Paragraph 4, that states that the base rent shall be determined "to be in an amount equal to the actual square footage of the Building," as certified to by Sportsman's licensed architect and confirmed by Canyon Park's architect. Thus, as Sportsman's reasons, the square footage listed on the first page of the Lease was, as its language states, an approximation until the actual square footage was determined.

We find that McDevitt's interpretation of the Lease is not reasonable given the language of the Lease and the depiction of the Premises in Exhibit B-1, and that the Lease unambiguously does not include the sidewalk as a part of the leased premises. However, even if the discrepancy in square footage is enough to create an ambiguity as a matter of law, there was no genuine issue of material fact in interpreting the Lease, and thus the district court did not err in granting summary judgment. If the Lease "is determined to be ambiguous, the interpretation of the document is a question of fact which focuses on the intent of the parties." *Page v. Pasquali*, 150 Idaho 150, 152, 244 P.3d 1236, 1238 (2010). Sportsman's has provided evidence in the form of deposition testimony of Tina Luper, representative of both Canyon Park as well as its property

managers Neilson and Company, that Sportsman's' leased premises only extended "within the exterior walls" of the building as defined in the Lease. McDevitt has provided no evidence that the intent of either Sportsman's or Canyon Park differed from that interpretation other than the discrepancy in the square footage itself. Because there is no conflicting evidence on this point, we find that even if the Lease is ambiguous, there was no genuine issue of fact regarding the intent of the parties that the leased premises only included the building itself, and therefore the district court properly determined that the sidewalk was not part of the leased premises.

b.      Sportsman's did not have control over the sidewalk

Idaho case law has also suggested that a tenant has a duty to make reasonably safe an area over which it has control. *Harrison*, 115 Idaho at 596, 768 P.2d at 1329 ("[A] tenant or lessee, having control of the premises is deemed, so far as third parties are concerned, to be the owner, and in case of injury to third parties occasioned by the condition or use of the premises, the general rule is that the tenant or lessee may be liable for failure to keep the premises in repair."); *Johnson*, 126 Idaho at 317, 882 P.2d at 972 ("[A] tenant generally will not be held legally responsible for conditions existing outside the area over which it has possession or control."); *see also Heath v. Honker's Mini Mart, Inc.*, 134 Idaho 711, 714–15, 8 P.3d 1254, 1257–58 (Ct. App. 2000) ("[T]he general rule of premises liability is that one having control of the premises may be liable for failure to keep the premises in repair" (citing *Harrison*, 115 Idaho at 596, 768 P.2d at 1329)). No Idaho case has confronted a fact pattern such as the one at issue here, where the area over which the tenant allegedly has control is not a part of the leased premises.[4]  Particularly, at issue here is whether a tenant in a multi-tenant shopping center has a duty to make safe common areas which are not a part of its leased premises. This question has been considered by many other jurisdictions, the vast majority of which have found that absent a contractual obligation, a tenant in a multi-tenant shopping mall does not have control over common areas, and therefore has no duty to keep them safe for invitees. *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 121 & n.4 (3d Cir. 2010) (listing "the great majority of other jurisdictions .

---

[4] The Court has confronted a somewhat similar situation in the context of a landowner, the landlord, rather than the tenant. *McKinley v. Fanning*, 100 Idaho 189, 191, 595 P.2d 1084, 1086 (1979). In *McKinley*, the plaintiff, who was the tenant of a café, slipped and fell on an icy public sidewalk abutting the café leased to her by the landowner-defendant. 100 Idaho at 190, 595 P.2d at 1085. The Court held that the landowner-defendant "had a duty to pedestrians using the public sidewalk to exercise reasonable care not to create a dangerous condition on the sidewalk" and "a further duty to remedy any dangerous condition which his alterations of the property had caused if it jeopardized safe passage on the public sidewalk." *Id.* at 191, 595 P.2d at 1086. However, because the defendant in that case was the landlord, not the tenant, and because the Court seems to have rested its decision on the fact that the landlord created the dangerous condition and then failed to make it safe, the facts are not sufficiently analogous to the issue presented here.

. . which hold that a lessee in a multi-tenant shopping center does not have a duty to maintain common areas controlled by the landlord"); *Barrows v. Trs. of Princeton Univ.*, 581 A.2d 913, 915 (N.J. Super. Ct. Law. Div. 1990) ("Because tenants in a multi-tenant shopping mall will not, absent a contractual obligation, have control or maintenance responsibilities for common walkways or sidewalks, this court concludes that the duties imposed by *Stewart* and *Antenucci* [to maintain an abutting walkway] do not extend to tenants in multi-tenant shopping complexes."); Frank D. Wagner, Annotation, *Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises Not Included in His Leasehold*, 48 A.L.R.3d 1163, § 3[a] (2009) ("[I]n the absence of a controlling statute, the lessee of a business establishment within a shopping center [is] not liable for injuries sustained by a patron on a portion of the center premises not included in the leasehold, where a provision of the lease gave the lessor the duty to maintain the area in question.").

This comports with the general rule in landlord-tenant law that the landlord and not the tenant has the duty to ensure the safety of the common areas in an apartment building such as halls, lobbies, stairs and elevators. *See, e.g.*, *Samson v. Saginaw Prof'l Bldg., Inc.*, 224 N.W.2d 843, 849 (Mich. 1975) ("[T]he landlord has retained his responsibility for the common areas of the building which are not leased to his tenants. The common areas such as the halls, lobby, stairs, elevators, etc., are leased to no individual tenant and remain the responsibility of the landlord. It is his responsibility to insure that these areas are kept in good repair and reasonably safe for the use of his tenants and invitees.").

The Court of Appeals has previously rejected the idea that a landowner's common-law duty should be expanded to cover the adjacent premises when the owner or occupier does not control those adjacent premises. *Heath*, 134 Idaho at 715, 8 P.3d at 1258. In *Heath*, the Court of Appeals held that Honker's did not have a duty to a trespasser that was injured in a lot adjacent to Honker's because "Honker's neither owned, occupied, nor controlled the premises upon which Heath fell and was injured." *Id.* The court noted that Heath was asking the court "to expand the law of negligence in Idaho so that the owner of commercial property is responsible for conditions upon unoccupied adjacent property, that it does not control, which cause injury." *Id.* It concluded that "such an expansion of the law should rest in the hands of the legislative branch through codification of the law of negligence as it pertains to the duty of landowners." *Id.* The facts in *Heath* are not analogous to this case because Honker's was a landowner, not a tenant, and Heath was a trespasser, not an invitee. However, McDevitt here similarly asks this Court to

8

expand Idaho's negligence law to extend to an area abutting a tenant's leased premises, which that tenant neither owns nor controls.

It is undisputed here that Sportsman's did not have control of the sidewalk. The Lease imposed the duty to maintain the common areas on the landlord Canyon Park. McDevitt argues that the fact that Sportsman's had parked hot dog stands and display trailers on the sidewalk means that Sportsman's had control over the sidewalk. Ms. Luper stated in her deposition that the only way Sportsman's was allowed to use the sidewalk for its business, by placing a hot dog cart or display in it, was if it first obtained approval from the landlord Canyon Park. Canyon Park also entered into a contract with Neilsen and Company to manage the common areas, including the sidewalk. The CC&Rs further designate all areas outside the buildings as "Common Areas" and state that Canyon Park "shall operate, manage, maintain, repair and/or replace the Common Area." The fact that under the terms of the Lease Sportsman's had no ability to alter or change the sidewalk that Canyon Park owned without Canyon Park's permission further indicates that Sportsman's did not have control over it. *Acosta v. City of Santa Fe*, 11 P.3d 596, 602 (N.M. Ct. App. 2000) (finding that an ordinance requiring the tenant to make repairs to the public sidewalk abutting its building was not enough to transfer control of the sidewalk from the City, who owned it, to the tenant, because the tenant had no ability to alter, destroy, or otherwise transform the sidewalk). Sportsman's also had no obligation or right to perform repairs on the sidewalk because the duty to maintain the common areas, which included the sidewalk, was on Canyon Park. *See Marrone v. S. Shore Props.*, 816 N.Y.S.2d 530, 532 (N.Y. App. Div. 2006) (finding that because the commercial tenant CVS did not own and had no exclusive right to possess the sidewalks, and because it had no obligation or right to perform repairs on or clear the sidewalks, it did not owe a duty to invitees on the sidewalk). Therefore, the fact that Sportsman's' leased premises were abutting the sidewalk is not enough on its own to show control. 62A Am. Jur. 2d *Premises Liability* § 620 ("[M]ere adjacency does not connote control, nor impose liability."). As a result, we hold that the district court did not err in finding as a matter of law that without any evidence of control over the sidewalk, Sportsman's did not owe its invitees a duty to keep the sidewalk safe or warn of dangers.

   2.   *We Decline to Expand Idaho's Negligence Law to Apply to a Common Area in a Multi-Tenant Shopping Center That Is Also a Potential Path of Ingress and Egress*

McDevitt argues that Sportsman's had a duty to warn invitees of hazards located near an

entrance to the tenant's business. McDevitt only cites one case in support of this argument, the New Jersey Superior Court case *Jackson v. Kmart Corp.*, 442 A.2d 1087 (N.J. Super. Ct. Law Div. 1981). In that case, the court referenced the landmark decision of the New Jersey Supreme Court in *Stewart v. 104 Wallace Street, Inc.*, 432 A.2d 881 (N.J. 1981), which held that a landowner has a duty to maintain a public sidewalk abutting his property in reasonably good condition. 432 A.2d at 881. *Stewart* cited five public policy reasons for this rule, including (1) that an innocent party may be left without recourse if injured on a public sidewalk; (2) the previous rule of non-liability was a disincentive for maintenance; (3) the assumption that municipalities held primary responsibility for public sidewalk maintenance did not reflect the realities of real life; (4) proof difficulties of proper sidewalk maintenance; and (5) the arbitrariness of the boundary for a duty being placed at the edge of the premises. *Id.* The *Jackson* court concluded that under *Stewart*, a commercial tenant has a duty to provide a safe path of egress from the premises. 442 A.2d at 1090.

In 2010, the Third Circuit had occasion to review New Jersey's line of cases on sidewalk liability, particularly in a multi-tenant shopping center. *Holmes*, 598 F.3d 115. In analyzing *Stewart* and its progeny in great detail, including *Jackson*, the court determined that New Jersey would find that a lessee in a multi-tenant shopping center does not have a duty to maintain the common areas controlled by the landlord. *Id.* at 121.[5] The Third Circuit set out its policy reasons for this rule, including (1) increased costs and confusion in requiring a tenant to make safe an area that the landlord already has a great incentive to keep safe because of its duty to maintain it; (2) uncertainty as to which areas each tenant is responsible for, and (3) the fact that a plaintiff would still have a remedy in a multi-tenant situation because it can recover from the landlord. *Holmes*, 598 F.3d at 123–24. Further, imposition of a duty to warn on Sportsman's in this case would leave Sportsman's in the impossible position of being required to put up a sign or other warning in a common area, an area where it must seek the permission of its landlord Canyon Park to do so. The duty to warn in this case was on the party with control of the area and the ability to provide a warning, Canyon Park.

Thus, this Court declines to expand Idaho's current negligence law to impose a duty on the tenant who has no duty to maintain the sidewalk to keep it, as a potential path of ingress and egress, safe or warn of dangers on it.

---

[5] *See also* footnote 4 of the opinion, citing ten cases from different jurisdictions supporting this rule. *Holmes*, 598 F.3d at 121 n.4.

10

### 3. There Is No Issue of Fact That Sportman's Did Not Create the Hazard

Finally, McDevitt argues that Sportsman's owed McDevitt a duty to make the alleged hazard on the sidewalk safe because it created the hazard by "construct[ing] the sidewalk pursuant to its lease." Paragraph 6 of the Lease states that "[t]he Construction [of the Building upon the Premises] shall be performed by Tenant's contractor, Eckman Mitchell Construction L.L.C. (the "Contractor")." That paragraph goes on to direct that the construction "will result in a building to be constructed on the Premises with exterior architectural features as set forth on Exhibit F." Exhibit F to the Lease shows several architectural features of the building itself, including a pergola, metal roof, pillars, cornice, and parapet.

Imposition of a duty due to creation of a hazard is an exception to the general rule that a landowner or occupant of land does not, solely by reason of being an abutter, owe to the public a duty to keep it in a safe condition. 86 Am. Jur. Proof of Facts 3d 327, §4 (2005) (There is a "widely-recognized exception[] to the general rule of nonliability of an abutting owner or occupier. If an abutting owner or occupier creates a dangerous sidewalk condition, a duty arises to use reasonable care to warn pedestrians of its existence or to otherwise protect them against injury therefrom."). Idaho has recognized this exception at least in the context of a landlord's responsibility for a dangerous condition it created on a public sidewalk abutting its property. *McKinley v. Fanning*, 100 Idaho 189, 191, 595 P.2d 1084, 1086 (1979).

The district court here found that under this Court's decision in *Boise Car & Truck Rental Co. v. Waco, Inc.*, 108 Idaho 780, 702 P.2d 818 (1985), Sportsman's did not owe any duty for its potential creation of the dangerous condition in the sidewalk because "its liability ended when the leasehold improvements were concluded and Canyon Park assumed control of the sidewalk pursuant to the covenants of the shopping center or when Canyon Park became aware of the condition and failed to remedy the defect." The district court did not decide whether there was an issue of fact as to whether Sportsman's actually created the hazard under the provision of the Lease listing Eckman & Mitchell as its contractor for the building.

In *Boise Car*, the Court held that the defendant-tenant did not "create" the unsafe airport hangar it contracted to have built while it was in possession of the land it was built on, because "the hangar was created by the non-party construction contractor and engineer who actually designed and built it." 108 Idaho at 784, 702 P.2d at 822.

Similarly here, there is undisputed evidence in the record that the irrigation box was installed by Idaho Scapes and the sidewalk was poured around it by Eckman & Mitchell. The

11

architect who designed the plans also testified that he was under the direction of "the developer," who he described as the owner of the shopping center. McDevitt points to the provision in the Lease listing Eckman & Mitchell as Sportsman's' contractor. However, it is clear that under the Lease, Sportman's was responsible for constructing the building it was to lease, while Canyon Park was responsible for "Concurrent Site Improvements" that included paving "[a]ll portions of the Premises and the Shopping Center designated for vehicular or pedestrian use," as well as "[a]ll landscaping for the Premises and the Shopping Center." It is unclear from the record who Eckman & Mitchell was taking direction from in regard to its pouring of the sidewalk. However, even assuming that Sportsman's directed Eckman & Mitchell, under the reasoning of *Boise Car*, it was Idaho Scapes and Eckman & Mitchell who created the hazard on the sidewalk, not Sportsman's. Further, the responsibility was on Canyon Park under the Lease to pave the sidewalk and do the landscaping.

Because Sportsman's did not create the potential hazard, it is unnecessary for the Court to determine whether the district court erred when it determined that Sportsman's' responsibility for any potential creation of the hazard was extinguished by Canyon Park's control of the premises pursuant to the Lease.

For the reasons above, the decision of the district court is affirmed.

**B.     Neither Party Is Entitled to Attorney Fees on Appeal**

McDevitt seeks an award of attorney fees on appeal pursuant to I.C. § 12-121. Because the Court affirms the decision of the district court granting summary judgment against McDevitt, she also is not the prevailing party under I.R.C.P. 54. Thus no fees are awarded to McDevitt. *Kelley v. Yadon*, 150 Idaho 334, 338, 247 P.3d 199, 203 (2011). Sportsman's requests attorney fees under I.C. § 12-121 and -123 on the basis that the appeal was brought and pursued frivolously, unreasonably and without foundation. McDevitt supported her appeal with citations to case authority from Idaho and other jurisdictions, as well as citations to the record. She has argued for an extension of Idaho negligence law in good faith. It cannot be said that her appeal was without foundation or was brought frivolously, and Sportsman's does not provide any further argument to support its position. Therefore, Sportsman's is not awarded attorney fees under I.C. § 12-121 or -123 on appeal.

## VI. CONCLUSION

The decision of the district court granting summary judgment to Sportsman's is affirmed. Sportsman's, as a tenant in a multi-tenant shopping center, does not owe its invitees a duty to

12

keep the sidewalk reasonably safe or to warn of conditions on the sidewalk when the sidewalk is not a part of the leased premises and Sportsman's does not exercise control over it. Sportsman's did not create the hazard on the sidewalk because Idaho Scapes installed the irrigation box, and Eckman & Mitchell later poured the sidewalk around it, and under the Lease it was Canyon Park's responsibility to construct the common areas. No attorney fees are awarded on appeal. Costs to Sportsman's.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**

13