## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 37641

| | |
|---|---|
| JOHN STEM, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) Boise, December 2011 Term |
| v. | ) |
| | ) 2012 Opinion No. 47 |
| WESLEY C. PROUTY, | ) |
| | ) Filed: March 5, 2012 |
| Defendant-Respondent. | ) |
| | ) Stephen W. Kenyon, Clerk |
| And | ) |
| | ) |
| CITY OF GARDEN CITY, IDAHO, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

The decision of the district court is affirmed.

Crandall Law Office and Emil R. Berg, Boise, for appellant. Emil Berg argued.

Ringert Law Chartered, Boise, for respondent. James Reid argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

This appeal involves a negligence claim arising out of a forklift accident. Appellant, John Stem, was helping to load a forklift at his place of work when another employee backed the forklift over a water meter cover which broke under the weight of the forklift. Consequently, the forklift toppled and pinned Stem to the ground, resulting in severe injuries and the amputation of his right leg. Stem sued Respondent, Wesley C. Prouty, the owner and landlord of the property where the accident occurred, for negligence under a theory of premises liability for failing to

1

keep the premises safe. Stem alleges that the water meter cover was a light duty cover and was inadequate to support heavy duty vehicles such as forklifts. Stem amended his Complaint to include a negligence per se claim against Prouty for failing to obtain a building permit in violation of city and state codes, which he argues would have likely led to the discovery of the defective water meter cover. The district court granted Prouty's Motion for Partial Summary Judgment, dismissing the negligence claim based on premises liability. Prouty filed a second Motion for Summary Judgment on the negligence per se claim which was originally denied by the court. Then, upon Motion for Reconsideration, the court granted Prouty summary judgment, dismissing the negligence per se claim. Stem now appeals from the court's Final Judgment dismissing all negligence claims against Prouty.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Respondent, Wesley C. Prouty, is the owner of real property located at 4684-4688 Chinden Boulevard, (the "Premises"), in Garden City, Idaho which includes a building containing three rental units. Prouty uses one rental space to operate his business, Intermountain Interiors, and leases the other two rental units to two other commercial tenants, Extreme Sports and Custom Rock Tops, Inc. The Premises also include a loading area where forklifts are regularly used, and several water meter covers, owned by the City of Garden City, are located on the property.

Appellant, John Stem, was an employee of Custom Rock Tops, a granite installation business. On November 29, 2006, Stem was helping to unload a slab of granite from a delivery truck while another employee of Custom Rock Tops operated the forklift. Stem's co-employee backed the forklift over a water meter cover which broke under the weight of the forklift. The forklift toppled over, pinning Stem's right leg to the ground. Stem suffered severe injuries which eventually led to the amputation of his right leg below the knee.

Stem sued Prouty for negligence under a theory of premises liability. Stem alleged that the shattered water meter cover was inadequate for the area because it was a light duty cover and thus unable to withstand the weight of heavy forklifts. Stem argued that the water meter cover should have been a heavy duty cover, capable of withstanding 16,000 pounds, as opposed to a light duty cover which is capable of supporting only 2,000 pounds. Stem alleged that Prouty negligently failed to make the premises safe and failed to warn Stem about concealed defects on the property that Prouty knew about or should have known about upon reasonable investigation.

2

Stem also sued the City of Garden City who owned and maintained the water meter lid for negligently maintaining the light duty water meter cover in an area with frequent forklift use, arguing that the city should have replaced the water meter cover with an adequate heavy duty cover. The district court dismissed the claim against the city with prejudice, based on the parties' stipulation.

Prouty filed a Motion for Partial Summary Judgment to dismiss the complaint against him, arguing that he had no duty to warn Stem about the water meter cover because he had no knowledge and had no reason to know that the water meter cover was defective. The district court granted Prouty summary judgment, finding that although Prouty owed Stem a duty as an invitee to keep the premises reasonably safe and warn him of any concealed dangers, Stem failed to establish that Prouty breached such a duty. Specifically, the lower court found that Stem failed to show that Prouty knew, or could have known upon reasonable examination, that the water meter cover was defective upon reasonable investigation. The court allowed Stem to amend his Complaint to include a claim of negligence per se against Prouty for failing to obtain a building permit in violation of Garden City Code sections 6-2-9 and 6-2-17, and Idaho Code section 39-41-11. Stem argued that had Prouty obtained a building permit when he added a third overhead door to improve forklift access, a site inspection would have been performed, revealing the defective water meter cover.

Prouty filed a second Motion for Summary Judgment to dismiss Stem's negligence per se claim, arguing that the addition of a third overhead door did not materially change the use of the Premises and that a site inspection was not required under the building codes. Stem filed a Cross-Motion for Summary Judgment against Prouty, arguing that Prouty's violation of the building codes established negligence per se. However, the district court denied summary judgment, finding a genuine issue of material fact existed regarding "whether site engineering would have been performed in conjunction with the permitting process." Prouty filed a motion to reconsider the lower court's ruling, arguing that because the city ordinances do not require site engineering for every building permit, Stem cannot prove that failing to obtain a building permit would have led to a site engineering inspection which would have discovered the defective water cover lid. In granting Prouty's Motion for Reconsideration and ordering summary judgment in favor of Prouty, the court explained that because site engineering is a discretionary matter and is not clearly defined as required in connection with all building permits, liability under negligence

3

per se cannot attach. Stem appeals from the district court's entry of Final Judgment in favor of Prouty, dismissing all claims.

### III. ISSUES ON APPEAL

1. Whether the district court erred in granting Prouty's Motion for Summary Judgment by finding that Stem failed to prove that Prouty knew or should have known that the water meter cover was defective?

2. Whether the district court erred in granting summary judgment to Prouty by finding that Stem failed to prove the elements of negligence per se because site engineering is not clearly defined as a requirement in the statute?

### IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion. *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004) (internal citations omitted). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). Moreover, a mere scintilla of evidence or merely casting a slight doubt over the facts will not defeat summary judgment. *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986). In other words, to create a genuine issue, there must be evidence upon which a jury may rely. *See id.* (citing *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969)).

### V. ANALYSIS

**A. The District Court Did Not Err In Granting Prouty Summary Judgment by Finding that Stem Failed to Prove that Prouty Knew or Should Have Known that the Water Meter Cover Was Dangerous**

The Premises were originally owned by WM3 Properties as vacant land. Then, in 1985, WM3 Properties constructed a building upon the Premises which included three rental spaces and two overhead doors to create a loading area. In 1992, Prouty began leasing one of the rental units to run Intermountain Interiors. Then, in 1994, Prouty purchased the Premises from WM3 Properties and remained in one of the building's rental units. That same year, Prouty leased the second rental space to Extreme Sports, and in 2006, Prouty leased the third rental space to Custom Rock Tops. Beginning in 1992, when Prouty first occupied the Premises as a tenant, he

used forklifts in the regular course of operating his business and has continued to use forklifts in the loading area, as do the other tenants.

1.    *There Is No Evidence to Support a Finding that Prouty Breached his Duty Owed to Stem as an Invitee*

In order to establish negligence, the plaintiff must prove the existence of each element: (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *McDevitt v. Sportsman's Warehouse, Inc.*, 151 Idaho 280, 284, 255 P.3d 166, 1170 (2011) (citing *McKim v. Horner*, 143 Idaho 568, 572, 149 P.3d 843, 847 (2006)). Prouty is entitled to summary judgment if he produces sufficient evidence to establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. To defeat summary judgment, Stem bears the burden of establishing a genuine issue of fact exists regarding the claim of negligence. Under Idaho law, a landowner's duty is determined by the status of the person injured on the landowner's property. *Holzheimer v. Johannesen*, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994). "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." *Id.* at 400, 871 P.2d at 817 (citing *Wilson v. Bogert*, 81 Idaho 535, 347 P.2d 341 (1959)). A landowner owes an invitee the duty to keep the premises reasonably safe, and to warn of any concealed dangers which the landowner knows of or should have known of upon reasonable investigation of the land. *Walton v. Potlatch Corp.*, 116 Idaho 892, 898, 781 P.2d 229, 235 (1989).

The district court found that Stem was an invitee and that Prouty owed him a duty to maintain the Premises in a reasonably safe condition and to warn Stem of any concealed dangers which Prouty knew of or should have known of through reasonable care. However, the court further determined that Stem failed to submit sufficient evidence that Prouty breached his duty because Stem failed to prove that Prouty knew or should have known that the water meter cover was dangerous or defective. Stem argues that the lower court erred because there is a genuine issue of material fact regarding whether Prouty performed his duty.

As noted above, in order to withstand summary judgment, the plaintiff must present sufficient evidence upon which a jury could rely. *Corbridge*, 112 Idaho at 87, 730 P.2d at 1007 (citing *Petricevich*, 92 Idaho at 871, 452 P.2d at 368 (1969)). In support of Stem's argument that

Prouty knew or should have known that the water meter cover was defective, Stem presented evidence of statements made by Prouty which Stem argues shows that Prouty distrusted the water cover lids. Stem presented the depositions of Officer Heath Compton and Investigator Lance Anderson who testified that Prouty instructed his employees not to drive the forklifts over the water meter covers and that he did not trust them. However, in his own deposition, Prouty explained that he only told his employees of Intermountain Interiors not to drive over the water meter cover on his side of the building because of a six to nine inch depression surrounding a water meter cover that is not involved in this action. There is no evidence that Prouty had any knowledge of the weight bearing capacity of the water meter covers, or any training or experience that would give him such knowledge. To the extent that any inferences might be drawn from Prouty's instructions to avoid driving over the water meter covers, it provides, at best, a scintilla of evidence, which is not enough to overcome a motion for summary judgment. *See Petricevich*, 92 Idaho at 871, 730 P.2d at 1007.

This Court affirms the district court's grant of summary judgment because the evidence presented by Stem fails to demonstrate the existence of a genuine issue of material fact. There is no evidence in the record to support a finding that Prouty knew or should have known that the water meter cover was dangerous. Stem argues that Prouty was negligent in failing to inspect the water meter cover; yet a visual inspection would not have revealed its defective nature. Prouty had no knowledge of the load bearing capacity of the water meter covers when he took over the property, and he had no reason to think the water meter covers were inadequate to support the weight of forklifts. Prouty operated forklifts on the Premises as a tenant in 1992 and has continued to use forklifts on the property as the current owner of the Premises. Finally, Prouty and the other tenants regularly drove forklifts across the water meter covers on the Premises for twelve years without any accident to indicate their defective nature. Therefore, this Court finds that the district court did not err in granting summary judgment because Stem failed to prove that Prouty breached his duty owed to invitees such as Stem.

**B.      The District Court Did Not Err In Granting Prouty Summary Judgment by Finding that Stem Failed to Prove the Elements of Negligence Per Se**

Shortly after Prouty purchased the Premises in 1994, Prouty added a third overhead door to the building to improve forklift access among the tenants. Prior to this change, the forklifts could only access the portion of the building closest to Prouty's business, Intermountain Interiors. Prouty added the third overhead door so that the other tenants, specifically Extreme

Sports, could easily use a forklift to access the loading area near their respective businesses. There is no evidence or record to prove that Prouty obtained a building permit before he made the alteration to the building.

Idaho Code section 39-4111(1) states in pertinent part:

It shall be unlawful for any person to do, or cause or permit to be done, whether acting as principal, agent or employee, any construction, improvement, extension or alteration of any building, residence or structure, coming under the purview of the division, in the state of Idaho without first procuring a permit from the division authorizing such work to be done.

Furthermore, the 1994 Uniform Building Code section 106.3.2, which was adopted by Garden City, instructs individuals who are applying for a permit to submit documents such as architectural or engineering plans with their application for a building permit. Nevertheless, section 106.3.2 of the code contains the following exception:

The building official may waive the submission of plans, calculations, construction inspection requirements and other data if it is found that the nature of the work applied for is such that reviewing of plans is not necessary to obtain compliance with this code.

Stem contends that Prouty's failure to obtain a building permit constitutes negligence per se. Stem argues that if Prouty applied for a building permit, as required by Idaho law, when it added the third door, site engineering would have occurred, which would have revealed the inadequacy of the water meter covers on the Premises, and Prouty would have been required to replace the water meter covers before his application could be approved by Garden City, thereby preventing Stem's accident. At first, the district court denied Prouty's Motion for Summary Judgment on the claim of negligence per se because the court found that there was a genuine issue of material fact regarding whether the building code required site engineering. However, upon Motion for Reconsideration, Prouty clarified that because site engineering is not clearly defined as required in the code, Stem cannot show that failing to obtain a building permit was the proximate cause of the accident. Because the decision to conduct site engineering is discretionary, Prouty argued that even if he had applied for a building permit, an inspection of the Premises may not have occurred. The district court ultimately granted Prouty summary judgment finding that site engineering was not a clearly defined statutory requirement. In its Memorandum Decision, the court reasoned that Stem's negligence per se claim is based on Prouty's failure to obtain a building permit, yet the true "omission at the crux of this case concerns the legal requirement to obtain site engineering."

7

*1.    The District Court Did Not Err In Granting Prouty's Motion for Summary Judgment upon Reconsideration by Determining that Site Engineering Was Not a Requirement of the Building Permit Process*

In order to prove negligence per se, this Court has held that "the statute must (1) clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury." *Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001) (citing *Sanchez v. Galey*, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986)). This Court finds that the code clearly defines obtaining a building permit as a requirement before making any structural change to a building. Further, there is no documentation to support a finding that Prouty complied with the code and obtained a building permit. Building codes and regulations are designed to ensure that safe structures are built to protect people from physical injuries, such as the one suffered by Stem. As an invitee on the Premises, Stem is a member of the class of persons the code was designed to protect. However, in order for Stem's negligence per se claim to withstand summary judgment, Stem must also be able to show that the violation of the statute or ordinance was the proximate cause of his injuries. *See Jerome Thriftway Drug, Inc. v. Winslow*, 110 Idaho 615, 618, 717 P.2d 1033, 1036 (1986) (citing *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984); *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983)).

On appeal Stem argues that a genuine issue of material fact exists regarding whether Prouty's failure to obtain a building permit was the proximate cause of Stem's injury. For support, Stem presented testimony from Robert E. Ruhl, Garden City's former Director of Public Works who stated that Garden City would have required a building permit for the addition of a third overhead door. Ruhl further opined that if Prouty had applied for a permit, site engineering would have occurred. Stem also relied on the testimony of his expert, Mark Hedge, who opined that the installation of an overhead door would have constituted a change in use which would have required site engineering. On the other hand, Prouty presented evidence which shows that site engineering is not clearly defined as a requirement in the applicable building codes. During the course of discovery, Garden City responded to a Request for Admission indicating that the city would not have required site engineering for all building permits. Garden City stated:

8

> A building permit would have been required to install an overhead in 1994. Defendant City of Garden City, Idaho's role in issuing the building permit is not to determine whether site engineering was required under the applicable Uniform Building Code. **The extent to which site engineering is required to safely design for the installation of an overhead door is a *matter of engineering judgment*.** Defendant City of Garden City, Idaho did not specifically require site engineering to issue a permit.

(Emphasis added).

Although Stem has presented evidence that site engineering may have occurred, it is equally clear that site engineering is a discretionary matter. The applicable building codes requiring a building permit do not mandate site engineering. Therefore, Prouty's failure to obtain a building permit is not the proximate cause of Stem's injury. The doctrine of negligence per se mandates that the statute or ordinance must clearly define the required standard of conduct. This Court finds that Stem cannot prove the elements of negligence per se because site engineering is not a clearly defined requirement in the building codes. Therefore, this Court finds that the district court did not err in granting Prouty summary judgment because Stem failed to show that Prouty's failure to obtain a building permit was the proximate cause of his injury.

## VI. CONCLUSION

For the reasons explained above, this Court holds that the district court did not err in granting Prouty summary judgment on the premises liability claim or in granting summary judgment upon motion for reconsideration on the claim of negligence per se. Neither party requested attorney's fees on appeal. This Court affirms the district court's rulings dismissing all claims in favor of Prouty. Costs are awarded to Prouty.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.

9