# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38966

| | |
|---|---|
| BUD ROUNTREE, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| BOISE BASEBALL, LLC, a Delaware | ) |
| limited liability corporation d.b.a. Boise | ) |
| Baseball, d.b.a. Boise Baseball Club d.b.a. | ) |
| Boise Hawks Baseball Club LLC, d.b.a. Boise | ) |
| Hawks, BOISE BASEBALL, LLC, an Idaho | ) |
| limited liability corporation d.b.a. Boise | ) |
| Baseball, d.b.a. Boise Baseball Club, d.b.a. | ) |
| Boise Hawks Baseball Club, LLC, d.b.a. Boise | ) |
| Hawks, BOISE HAWKS BASEBALL CLUB, | ) |
| LLC, an assumed business for Boise Baseball, | ) |
| LLC; HOME PLATE FOOD SERVICES, | ) |
| LLC, an Idaho limited liability corporation, | ) **Boise, January 2013 Term** |
| (only the foregoing are Appellants herein); | ) |
| MEMORIAL STADIUM, INC.; WRIGHT | ) **2013 Opinion No. 24** |
| BROTHERS, THE BUILDING COMPANY, | ) |
| an Idaho general business corporation, | ) **Filed: February 22, 2013** |
| TRIPLE P, INC., an Idaho general | ) |
| corporation, DIAMOND SPORTS, INC., a | ) **Stephen W. Kenyon, Clerk** |
| New York corporation, DIAMOND SPORT | ) |
| CORP., an Idaho corporation, DIAMOND | ) |
| SPORTS MANAGEMENT AND | ) |
| DEVELOPMENT, LLC, an Idaho limited | ) |
| liability corporation; CH2M HILL, INC., a | ) |
| Florida corporation d.b.a. Ch2M Hill, CH2M | ) |
| HILL CONSTRUCTORS, INC. d.b.a. Ch2M | ) |
| Hill, CH2M HILL E&C, INC., d.b.a. Ch2M | ) |
| Hill, CH2M HILL ENGINEERS, INC. d.b.a. | ) |
| Ch2M Hill, CH2M HILL INDUSTRIAL | ) |
| DESIGN AND CONSTRUCTION, an | ) |
| assumed business name of Ch2M Engineers, | ) |
| Inc., CH2M Engineers, Inc., CH2M HILL, a | ) |
| foreign corporation doing business in Idaho | ) |
| under the name Ch2M Hill; WILLIAM | ) |
| CORD PEREIRA; ROBERT PEREIRA, and | ) |
| JOHN DOES I through X, whose identities | ) |
| are unknown, | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Darla S. Williamson, District Judge.

The order of the district court is affirmed.

Elam & Burke, P.A., Boise, for appellants. Joshua S. Evett argued.

Seiniger Law Office, P.A., Boise, for respondent. William Breck Seiniger argued.



J. JONES, Justice.

This is a permissive appeal of an interlocutory order that declined to limit the duty owed by baseball stadium owners and operators to spectators injured by foul balls. Boise Baseball, LLC, Boise Hawks Baseball Club, LLC, and Home Plate Food Services, LLC, (collectively "Boise Baseball") sought, and we granted, a permissive appeal of the district court's order. We affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

The facts of this case are largely undisputed. Rountree has been a Boise Hawks season ticket holder for over 20 years. On August 13, 2008, he took his wife and two grandchildren to a Boise Hawks game at Memorial Stadium in Garden City.  Rountree concedes the stadium has "exceptionally extensive [mesh] netting" to protect spectators from errant foul balls. Specifically, "most portions of the stadium are protected by vertical mesh netting approximately 30 feet high, and several areas are protected from above by horizontal netting." Rountree's tickets were in the "Viper" section, which is protected by netting. The stadium also has an area known as the "Hawks Nest," which is a dining area along the third base line covered by both vertical and horizontal netting. Adjacent to the Hawks Nest, at the "very end of the third base line," is the "Executive Club." The Executive Club, while covered by horizontal netting, "is one of the only areas in the whole stadium not covered by vertical netting."

At some point during the game, Rountree and his family went to the Hawks Nest to eat. After eating, they went to the Executive Club. While in the Executive Club, Rountree started talking to someone and stopped paying attention to the game. Approximately ten minutes later, Rountree heard the roar of the crowd and turned his head back to the game. He was struck by a foul ball and, as a result, lost his eye.

The entrance to the Executive Club has no warning signs regarding the dangers of being hit by foul balls. However, the back of Rountree's ticket stated that, "THE HOLDER ASSUMES ALL RISK AND DANGERS INCIDENTAL TO THE GAME OF BASEBALL INCLUDING SPECIFICALLY (BUT NOT EXCLUSIVELY) THE DANGER OF BEING INJURED BY THROWN OR BATTED BALLS." Rountree asserts he never read the back of his ticket prior to the injury.

On August 10, 2010, Rountree brought suit against approximately 17 Defendants. He alleged that their negligence caused the loss of his eye. On March 2, 2011, Boise Baseball moved for summary judgment, arguing that the district court should adopt the Baseball Rule, which limits the duty of stadium operators to spectators hit by foul balls, and find that Boise Baseball complied with it. Alternatively, Boise Baseball argued that Rountree impliedly "consented to the risk of being hit by a foul ball." The district court denied the motion on both grounds. Pursuant to Idaho Appellate Rule (I.A.R.) 12, Boise Baseball then moved for permission to appeal the district court's order. Permission to appeal was granted by the district court and, similarly, by this Court. Boise Baseball accordingly appealed.

**II.**
**ISSUES ON APPEAL**

I.      Should this Court adopt the "Baseball Rule," which limits the duty owed by stadium operators to spectators injured by foul balls?
II.     Is primary implied assumption of the risk a valid defense in Idaho?

**III.**
**DISCUSSION**

**A. Standard of Review.**

A denial of a motion for summary judgment is ordinarily not an appealable order. However, "[p]ermission may be granted by the Supreme Court to appeal from an interlocutory order" if it "involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially

3

advance the orderly resolution of the litigation." I.A.R. 12; *Budell v. Todd*, 105 Idaho 2, 3, 665 P.2d 701, 702 (1983). Thus, this appeal, certified by the district court pursuant to I.A.R. 12, is "before [this Court] in an unusual posture." *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989); *see also Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009). As the *Winn* Court explained:

> [The Supreme Court is] constrained to rule narrowly and address only the precise question that was framed by the motion and answered by the trial court. Upon remand there will be many new questions to be addressed by the parties and the trial court. We do not intend to imply by our decision today what the answers to those questions are, or what the result of the litigation will be. We intend only to answer the question framed by the motion and answered by the trial court.

116 Idaho at 501, 777 P.2d at 723. Once we accept such an appeal, it "shall proceed in the same manner as an appeal as a matter of right, unless otherwise ordered by [the Court]." I.A.R. 12(d); *Aardema*, 147 Idaho at 789, 215 P.3d at 509.

In reviewing motions for summary judgment, "all facts and inferences must be drawn in favor of the nonmoving party, and summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Aardema*, 147 Idaho at 789, 215 P.3d at 509. If the plaintiff "fails to submit evidence to establish an essential element of the claim," summary judgment is appropriate. *Id.* "If the evidence reveals no disputed issue of material fact, only a question of law remains, over which this Court exercises free review." *Ruffing v. Ada Cnty. Paramedics*, 145 Idaho 943, 945, 188 P.3d 885, 887 (2008).

Boise Baseball's motion for summary judgment, and the district court's order granting permission to appeal, raised only two issues: whether the Baseball Rule applies in Idaho, and whether primary implied assumption of the risk is a valid defense in Idaho.[1] We hold that the Baseball Rule does not apply in Idaho, and that primary assumption of the risk is not a valid defense.

**B.     We decline to adopt the Baseball Rule.**

In its order on Boise Baseball's motion for summary judgment, the district court considered whether the Baseball Rule, which limits the duty owed by stadium owners and operators to spectators hit by foul balls, applies in Idaho. After surveying Idaho's duty rules in general, the court noted that "all courts that have examined the issue [of foul-ball injuries] have

---

[1] Because we are constrained to narrowly address these issues alone, we note at the outset that a host of irrelevant factual, legal, and procedural issues raised by the parties on appeal will not be addressed.

come to the conclusion that owners of baseball stadiums owe a limited duty to patrons with respect to the risk of being hit by a foul ball." As the district court put it:

> The majority rule that has emerged from these various cases is that "an owner of a baseball stadium has a duty to screen the most dangerous part of the stadium and to provide screened seats to as many spectators as may reasonably be expected to request them on an ordinary occasion."

(quoting *Lawson ex rel. Lawson v. Salt Lake Trappers, Inc.*, 901 P.2d 1013, 1015 (Utah 1995)). The court then detailed the Baseball Rule's benefits. Despite this, the district court concluded it was "unable" to adopt the rule. It found that the Legislature "knows how to define the scope of duties owed in the case of particular high risk businesses," and that public policy decisions must be made by the Legislature, not the courts. Consequently, the district court reasoned that until the Legislature intervenes, "baseball stadium owners will be held to the standard applicable to all business owners[—]that being a general duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others." Thus, though the district court found "there may be good reasons to adopt the baseball rule," it declined to do so, and denied Boise Baseball's motion for summary judgment on this point.

On appeal, Boise Baseball argues the district court erred in concluding that only the Legislature could adopt the Baseball Rule. It contends the district court's reading of case law is misguided because a "long line of cases" in Idaho have authorized courts to determine when a duty exists as a matter of law. Boise Baseball cites the majority of jurisdictions that have adopted the Baseball Rule, outlines the policy benefits of doing so, and requests that we adopt this similar formulation:

> [T]hat owners and operators of baseball stadiums/fields in Idaho are not liable for injuries to spectators caused by foul balls at baseball games so long as (1) there is screening behind the home plate area; and 2) such screening is of a sufficient extent to provide adequate protection for as many spectators as may reasonably be expected to desire such seating in the course of an ordinary game.

In response, Rountree argues that the Baseball Rule "is rapidly being abandoned." His primary contention is that, while the Baseball Rule might limit the duty of stadium operators with regard to spectators in bleachers, modern jurisdictions have found that for multi-purpose areas, such as the Executive Club, the duty should not be limited. Rountree argues that the Baseball Rule is "outmoded and in decline" and contrary to public policy. He therefore implores the Court to refrain from adopting it.

5

In order to establish a cause of action for negligence, a plaintiff must establish: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999). Whether a duty exists is a question of law, "over which this Court exercises free review." *Id.* Generally speaking, "[e]very person, in the conduct of his business, has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others." *Id.* We have identified several factors to determine whether a duty arises in a given context:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.*

The duty owed by owners and possessors of land depends on the status of the person injured on the land—that is, whether he or she is an invitee, licensee, or trespasser. *Ball v. City of Blackfoot*, 152 Idaho 673, 677, 273 P.3d 1266, 1270 (2012). An invitee "is one who enters upon the premises of another for a purpose connected with the business conducted on the land," and a landowner "owes an invitee the duty to keep the premises in a reasonably safe condition, or to warn of hidden or concealed dangers." *Id.*

The precise duty owed by stadium owners and operators to spectators struck by foul balls is a matter of first impression in Idaho. The majority of jurisdictions to consider the issue have limited this duty by adopting some variation of the Baseball Rule. *See generally* James L. Rigelhaupt, Jr., *Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured as Result of Other Hazards of Game,* 91 A.L.R. 3d 24 (1979 & Supp. 2003); *Quinn v. Recreation Park Ass'n*, 46 P.2d 144 (Cal. 1935); *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172 (Nev. 2008); *Lawson*, 901 P.2d 1013 (Utah 1995); *Bellezzo v. State*, 851 P.2d 847 (Ariz. App. 1992); *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531 (N.Y. 1981); *Arnold v. City of Cedar Rapids*, 443 N.W.2d 332 (Iowa 1989); *Anderson v. Kansas City Baseball Club*, 231 S.W.2d 170 (Mo. 1950); *Cincinnati Baseball Club Co. v. Eno*, 147 N.E. 86 (Ohio 1925).

Though many variations exist, the most common formulation of the Baseball Rule is that

stadium owners and operators must provide "screened seats [] for as many [spectators] as may be reasonably expected to call for them on any ordinary occasion." [2] *Quinn*, 46 P.2d at 146; *see also* Rigelhaupt, *supra*, 91 A.L.R. 3d 24 § 3[a]. The rationale behind this is put bluntly by the *Eno* Court: "it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness" and "they are liable to be thrown or batted outside the lines of the diamond." *Eno*, 147 N.E. at 87. The *Eno* Court therefore concluded that "due care on the part on the management does not require all of the spectators to be screened in; that the management performs its duty toward the spectators when it provides screened seats in the grand stand and gives spectators the opportunity of occupying them." *Id.*

Despite the district court's conclusion that only the Legislature could adopt the Baseball Rule, it is also within this Court's power to do so. The Court has established duties of care where none previously existed. For example, in *Stephens v. Stearns* we established a new duty of care for landlords—"[A]fter examining both the common-law rule and the modern trend, we today decide to leave the common-law rule and its exceptions behind, and we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances." 106 Idaho 249, 258, 678 P.2d 41, 50 (1984). We have expanded duties of care, as in *Sharp v. W. H. Moore, Inc.*, 118 Idaho 297, 300, 796 P.2d 506, 509 (1990), where we noted that, while a landlord does not necessarily have a duty to keep the building doors locked for the safety of the tenant, where the landlord and its property manager "initiated a locked door policy and had employed a security service with the intent of keeping the doors locked, they undertook such a duty and are subject to liability if they failed to perform that duty with a reasonable standard of care." We have also acted to limit an existing duty, much like Boise Baseball asks us to do in this case. In *Winn v. Frasher*, we adopted the "fireman's rule," limiting the duty owed by landowners to fire fighters and police officers who are injured on their premises, where such injuries are caused by the same conduct that required the officers' official presence on the premises. 116 Idaho at 503, 777 P.2d at 725.

However, even though the court may have the power to adopt a rule, such as the Baseball Rule, which limits the duty of a business owner, we decline to do so here. We find no compelling

---

[2] The second-most common variation, applied in approximately nine jurisdictions, is quite similar: that stadium owners and operators have a duty to provide "a choice between a screened[-]in and an open seat" for spectators who desire the protection. *See, e.g.*, *Lorino v. New Orleans Baseball & Amusement Co.*, 16 La. App. 95, 96, 133 So. 408, 409 (1931); Rigelhaupt, *supra*, 91 A.L.R. 2d 24 § 3[b].

public policy requiring us to do so. As the Court noted in *Winn*, though a "nose count" of how many jurisdictions endorse a particular rule might be impressive, widespread acceptance alone will not compel this Court to act similarly. *Winn*, 116 Idaho at 502, 777 P.2d at 724. Instead, in *Winn*, we concluded that, of the reasons to adopt the fireman's rule, the fact that it was "compelled by public policy" was "the rationale [] most appropriate for our consideration." *Id.* The compelling public policy there was that:

> The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence.
> . . . . .
> The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters, and society which distinguishes safety officers from other employees. Thus, safety officers are not "second-class citizens," but, rather, are "different" than other employees.

*Id.* at 503, 777 P.2d at 725. We therefore concluded that the fireman's rule applies in Idaho. *Id.*

But we do not find that an equally compelling public policy exists here. In *Winn*, we noted the fundamental link between firefighters confronting danger and sustaining consequent injuries. No similar link between baseball and spectator injuries has been shown. In fact, Boise Baseball admits that at least for "seven seasons[, Mr. Rountree's] accident is the only time a spectator has suffered a 'major' injury because of a foul ball" at Memorial Stadium. The rarity of these incidents weighs against crafting a special rule. There is no history of accidents that we can look to, and draw from, to sensibly create a rule. Furthermore, Boise Baseball has not provided any broader statistical evidence regarding the prevalence of foul ball injuries in general, and—assuming they are so prevalent—how varying stadium designs might prevent them. Without this information, drawing lines as to where a stadium owner's duty begins, where netting should be placed, and so on, becomes guesswork. These kinds of questions are appropriate for the Legislature because it "has the resources for the research, study and proper formulation of broad public policy." *Anstine v. Hawkins*, 92 Idaho 561, 563, 447 P.2d 677, 679 (1968). Declining to adopt the Baseball Rule leaves policy formulation to the deliberative body that is better positioned to consider the pros and cons of the issue.

This decision is in keeping with those states whose legislatures have seen fit to adopt variations of the Baseball Rule. *See, e.g.*, Ariz. Rev. Stat. Ann. § 12-554; Colo Rev. Stat. Ann. §

8

13-21-120 (1994); N.J. Stat. Ann. § 2A:53A-43 to 2A:53A-48; 745 Ill. Comp. Stat. Ann. 38/10. Our Legislature can create a similar rule if it chooses. However, no compelling public policy rationale exists for us to do so. Thus, we decline to adopt the Baseball Rule.

### C. Primary implied assumption of risk is not a valid defense in Idaho.

The district court addressed a related issue in its denial of Boise Baseball's motion for summary judgment—the current status of primary implied assumption of risk under Idaho law. In doing so, the court looked to *Salinas v. Vierstra*, 107 Idaho 984, 989, 695 P.2d 369, 374 (1985), in which this Court held that "assumption of risk shall no longer be available as an absolute bar to recovery." Though *Salinas* also identified exceptions to this rule, the district court in this case found itself "constrained" to abide by its general holding, and "decline[d] to analyze whether [Rountree] may have impliedly consented to the risk" of being hit by a foul ball in this case.

On appeal, Boise Baseball distinguishes between assumption of risk in the primary sense, and the secondary sense. It then contends that following the decision in *Salinas*, the *Winn* Court expressly stated that "any implied rejection of assumption of the risk in the 'primary sense' by the majority there was only *dicta*"; thus, Boise Baseball argues, the current viability of assumption of risk, in the primary sense, is an open question. *Winn*, 116 Idaho at 503, 777 P.2d at 725. Boise Baseball further warns of the policy implications of abrogating primary assumption of risk—that "sports participants in Idaho could be sued by a co-participant for injuries sustained as a result of voluntarily playing sports like baseball, softball, basketball, boxing, football, [etc.], despite the fact that there are inherent risks to these sports," which are known and consented to by the athletes.

Rountree agrees with the district court that *Salinas* has abrogated primary assumption of the risk in Idaho, and contends that assumption of the risk, "even when characterized as [primary] assumption of risk," is incompatible with principles of comparative negligence.

The sole issue here is whether, in light of *Salinas* and *Winn*, primary implied assumption of risk is a viable defense in Idaho. We reaffirm *Salinas*'s holding that assumption of the risk has no legal effect as a defense, except in instances of express written or oral consent. Thus, primary implied assumption of the risk is not a valid defense.

Generally speaking, the implied assumption of risk doctrine "is divided into two subcategories: 'primary' and 'secondary.'" *Turner*, 180 P.3d at 1177. Secondary implied

assumption of risk "is an affirmative defense to an established breach of duty and as such is a phase of contributory negligence." *Lawson*, 901 P.2d at 1016. Conversely, primary implied assumption of risk essentially means that the defendant was not negligent because there *was* no breach, or no duty. *Id*. Primary implied assumption of risk arises when "the plaintiff impliedly assumes those risks that are *inherent* in a particular activity." *Turner*, 180 P.3d at 1177. In contrasting the two subcategories, some courts have held that primary implied assumption of the risk, because it is "treat[ed] as part of the initial duty analysis, rather than as an affirmative defense," is compatible with comparative negligence schemes. *Id.* at 1178; *but see Pfenning v. Lineman*, 947 N.E.2d 392, 399–400 (Ind. 2011) (holding to the contrary that "incurred risk, even when characterized as objectively-assessed *primary* assumption of risk, cannot be a basis to find the absence of duty on the part of the alleged tortfeasor").

Idaho uses a comparative negligence standard. I.C. § 6-801 ("Contributory negligence or comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for negligence . . . ."). This creates a logical inconsistency with assumption of risk, which by definition bars recovery based on comparative responsibility. *See Salinas*, 107 Idaho at 989, 695 P.2d at 374. Thus, this Court held in *Salinas* that, "the use of assumption of risk as a defense shall have no legal effect in this state." *Id.* (also noting that "[t]he types of issues raised by a plaintiff's non-express assumption of risk are readily handled by resort to contributory negligence principles"). At the same time, *Salinas* identified limited circumstances in which assumption of the risk may still be used as a defense:

> The one exception to our holding today involves a situation where a plaintiff, either in writing or orally, expressly assumes the risk involved. In such a case, the plaintiff's assumption of the risk will continue to be a complete bar to recovery. Again, in order to avoid misunderstanding and confusion, the terminology of assumption of risk, however, should not be used. Rather, since express assumption of risk clearly sounds in contract and not tort, [] the correct terminology to use to assert this defense should be that of "consent" or something of a similar nature.

*Id.* at 990, 695 P.2d at 375 (citations omitted).

Four years later the *Winn* Court revisited *Salinas*, and in particular, its import on primary implied assumption of risk. *Winn*, 116 Idaho at 503, 777 P.2d at 725. While noting the disparate ways in which courts framed the duty at issue there, the *Winn* Court explained that:

10

Defendants have suggested that we use assumption of the risk in the "primary sense" as the basis for our acceptance of the fireman's rule, despite the general rejection of assumption of the risk as a defense in *Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985). We note with interest that the special concurrence of Justice Spear in *Fawcett v. Irby*, 92 Idaho 48, 54–6, 436 P.2d 714, 720–21 (1968), that was relied upon by Justice Bistline in *Salinas*, (107 Idaho at 988, 990, 695 P.2d 369), carefully distinguished assumption of the risk in the "primary sense" from assumption of the risk in the "secondary sense," i.e., as a form of contributory negligence. Our reading of *Salinas* convinces us, however, that any implied rejection of assumption of the risk in the "primary sense" by the majority there was only *dicta*. The facts of *Salinas* were appropriate for the application of assumption of the risk in the "secondary sense" only. We do not, therefore, feel bound not to consider whether *Salinas* declared assumption of the risk in the "primary sense" no longer viable. Nevertheless, we decline to premise our decision here upon such a nebulous and confounded concept.

*Id.* In sum, although *Salinas* barred assumption of risk in general, our decision in *Winn* forestalled resolving whether primary assumption of risk was somehow different.

We reaffirm our holding in *Salinas*: the use of assumption of risk as a defense shall have no legal effect. Furthermore, we resolve the question left open by *Winn*, and hold that the general rule from *Salinas* applies to both primary and secondary assumption of the risk. Thus, primary implied assumption of the risk is not a valid defense. As this Court explained in *Salinas*, "Section 6-801's intent is clear: Contributory negligence is not to be a complete bar to recovery; instead, liability is to be apportioned between the parties based on the degree of fault for which each is responsible." *Salinas*, 107 Idaho at 989, 695 P.2d at 374. Accordingly, the *Salinas* Court warned of the "gross legal inconsistency [of] prohibiting the use of contributory negligence as an absolute bar," while allowing "its effect to continue" through assumption of risk defenses. *Id.* Because "[t]he types of issues raised by a plaintiff's non-express assumption of risk are readily handled by contributory negligence principles," we concluded that "issues should be discussed in terms of contributory negligence, not assumption of risk, and applied accordingly under our comparative negligence laws." *Id.*

Based on this analysis, we are not persuaded that primary implied assumption of the risk should be treated any differently. Allowing assumption of risk as an absolute bar is inconsistent with our comparative negligence system, whether the risks are inherent in an activity, or not. Moreover, cases involving primary implied assumption of the risk are "readily handled" by comparative negligence principles; as in any case, fault will be assessed, and liability

11

apportioned, based on the actions of the parties. Whether a party participated in something inherently dangerous will simply inform the comparison, rather than wholly preclude it. Here, whether watching baseball is inherently dangerous, and the degrees of fault to be apportioned to Rountree and Boise Baseball, are questions for the jury. Because comparative negligence can adroitly resolve these questions, there is no need for this Court to disturb its holding in *Salinas*: assumption of the risk—whether primary or secondary—shall not act as a defense.

## IV.
## CONCLUSION

We decline to adopt the Baseball Rule. We further hold that, apart from express written and oral consent, assumption of the risk, whether primary or secondary, is not a valid defense in Idaho. Costs on appeal are awarded to Rountree.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.