BRODY, Justice,
concurring in part, dissenting in part.
I respectfully dissent from Part IV.A1. of the Court's opinion, because I disagree with the majority’s conclusion that premises liability can only be imposed on an “owner” or “occupier” of land or them agents. This bright-line rule is inconsistent with our prior case law and may allow some responsible parties to escape liability.
The majority begins its analysis with the statement “[a]ppellants correctly inform us that ‘the general rule of premises liability is that one having control of the premises may be liable for failure to keep the premises in repair.’ Jones v. Starnes, 150 Idaho 257, 261, 245 P.3d 1009, 1013 (2011) (quoting Heath v. Honker’s Mini-Mart, Inc., 134 Idaho 711, 713, 8 P.3d 1254, 1256 (Ct.App. 2000)).” The majority then limits this principle by stating that our case law demonstrates that premises liability is limited to owners 'or occupiers or their agents. The majority contends that the issue of control only comes into play when there is a dispute between owners and occupiers as to whom actually owes a duty to the injured party. I disagree with the majority’s analysis.
*334 To begin with, none of the cases cited by the majority actually address whether someone other than an owner or occupier or their agents can be held responsible under a premises liability theory. The first ease the majority cites is Rountree v. Boise Baseball, LLC, 154 Idaho 167, 296 P.3d 373 (2013). In Rountree, the plaintiff was a patron at a Boise Hawks baseball game. Id. at 169, 296 P.3d at 375. He was seated in the executive section of the stadium when he was hit in the face with a baseball during the game. Id. He lost an eye. Id. He sued a number of parties, including the baseball team and the owner of the stadium. Id. Rountree contains this statement: “[t]he duty owed by owners and possessors of land depends on the status of the person injured on the land....” Id. at 171, 296 P.3d at 377. The majority quotes this language, but it is important to recognize that Rountree does not actually address whether someone other an owner or possessor of land can be held responsible under a premises liability theory. The issues actually decided in Rountree were whether Idaho should adopt the so-called “baseball rule” (a rule which limits owner liability to protect against foul balls) and whether the patron assumed the risk of being hit. Id. at 170-75, 296 P.3d at 376-81.
The majority also cites Stem v. Prouty, 152 Idaho 590, 272 P.3d 562 (2012). Stem involved a forklift accident. Id. at 591, 272 P.3d at 563. The plaintiff lost his leg after being pinned underneath a forklift that toppled over when it broke through a water meter cover in the floor. Id. The plaintiff sued the landowner, alleging that the premises were unsafe because the water meter cover was too thin to support the weight of the forklift. Id. The only issue decided by the Court was whether the landowner was not responsible because there was no evidence that he knew that the water meter cover created a dangerous condition. Id. at 593-94, 272 P.3d at 565-66. The Stem decision does not address whether a premises liability can be brought against a tortfeasor who is not a landowner or occupier.
The final ease cited by the majority is Harrison v. Taylor, 115 Idaho 588, 768 P.2d 1321 (1989). The plaintiff in Harrison brought suit against a building owner and tenant when she fell in a hole in a sidewalk in front of the business. Id. at 589-90, 768 P.2d at 1322-23. The trial court granted summary judgment in favor of the defendants based on the “open and obvious” doctrine. Id. at 590, 768 P.2d at 1323. This Court reversed, finding that the doctrine was inconsistent with Idaho’s comparative negligence laws. Id. at 595-96, 768 P.2d at 1328-29. Like Stem and Prouty, the Harrison decision did not address in any fashion whether a premises liability action could be brought against someone other than an owner or occupier or their agents.
The earliest case where the Court addressed premises liability in the context of a non-owner appeal's to be Otts v. Brough, 90 Idaho 124, 409 P.2d 95 (1965), superseded on other grounds by I.C. § 6-801. In Otts, the plaintiff was injured when he fell into a framed opening in a concrete floor. Id. at 128-29, 409 P.2d at 96-97. The plaintiff was a subcontractor who had been hired to do the ceiling insulation in a new school building that was being constructed in Rexburg. Id. The plaintiff sued the general contractor for failing to guard and warn against the danger created by the opening in the floor. Id. at 129, 409 P.2d at 97. The trial court granted summary judgment in favor of the general contractor, holding that the claim was barred by the defense of assumption of risk. Id. This Court reversed, holding that there were genuine issues of material fact which precluded summary judgment. Id. at 134-36, 409 P.2d at 100-02. In addressing the duty owed by the general contractor, the Court held: “Owners or persons in charge of property owe to an invitee or business visitor the duty to keep the premises in a reasonably safe condition, or to warn the invitee of hidden or concealed dangers of which the owner or one in charge knows or should know by exercise of reasonable care, in order that the invitee be not unnecessarily or unreasonably exposed to danger.” Id. at 131, 409 P.2d at 98 (emphasis added).
The majority contends that Otts can be squared with their holding today because there is evidence that the general contractor “occupied” the worksite. While I agree that *335 there is evidence in Otts from which a reasonable jury could reach that conclusion, the “persons in charge of property” language in Otts is a better test for determining whether premises liability should attach than the “occupier” label used by the majority. A simple example illustrates my point.
Suppose I hire a contractor to remodel my kitchen. The contractor works at my house a few days a week while my family and I are still living in the home. One day, my mother comes to visit. She is helping me cook dinner. She steps inside the pantry to get an ingredient and is injured when she falls into a hole in the floor. I had no idea the hole was there and there was no warning or barricade. Can the contractor be held responsible for her injuries under a premises liability theory for creating a dangerous condition on the premises? Under the majority’s decision today the answer would likely be no since the contractor does not “occupy” the house. My family and I do. If the analysis were “does the contractor control the premises”—as I advocate the legal test is in Idaho—the answer would much more likely be yes. Imposing premises liability on a contractor in a situation like this makes sense because he created the hazard and was in a position to remedy it or guard against it.
The majority’s decision to include “agents” within the categories of persons who can be held liable under a premises liability theory, while a step in the right direction, does not go far enough to address my concerns. Another example illustrates my point.
Suppose a local school district hires a general contractor to build a new science wing at its high school. The general contractor enters into a contract with a construction manager to oversee the project. A student is injured when he falls into a hole that has been covered with a flimsy piece of plywood. Can the general contractor and/or the professional construction manager be held responsible under a premises liability theory as “agents” of the school district? The majority says yes, asserting that general contractors and professional construction managers are “frequently” the agents of the landowner. My experience tells me differently.
This Court explained nearly 100 years ago that “[a]gency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to Ms control, and consent by the other so to act.” Gorton v. Doty, 57 Idaho 792, 798, 69 P.2d 186, 139 (1937) (emphasis added). When a school district hires a general contractor to build a new science wing, it usually does so because the district does not have the knowledge, skills, tools, or time to do the work. The general contractor is an independent contractor who exercises its own judgment about how to do the work and provides the tools and skills to get it done. There is a contractual relationship between the district and the general contractor, but that contractual relationship does not necessarily mean there is an agency relationship.
Similarly, the construction manager in my example cannot be the school district’s agent. The school district did not even contract with the construction manager so there is no consent by either party and the school district would have no control over anything the construction manager does. The general contractor might control the construction manager depending on the contractual relationship, but a professional construction manager may also be an independent contractor. While I would agree that it is the landowner who typically contracts with a construction manager and that an agency relationship is more likely to exist in that scenario, construction projects are carried out in many different ways and one cannot assume that a construction manager will always be the landowner’s agent. Given the complex nature of modern business entities and real estate transactions, it is possible to imagine the prospect of a general contractor or construction manager, who exercises the requisite control over the premises, escaping liability under the majority’s rule because he does not neatly fit within the categories elucidated today.
Other jurisdictions have dealt with this issue and have concluded that construction contractors share in premises liability, even though they are neither owner nor occupier. See Worth v. Eugene Gentile Builders, 697 *336 So.2d 946 (Fla. Dist. Ct. App. 1997) (holding that contractors may share premises liability for job site injuries when the premises are under the contractor’s control); see also 62 AM. JUR. 2D Premises Liability § 6 (2006); 13 AM. JUR. 2D Building and Construction Contracts § 136 (2009); 4r § 384. In Maine, premises liability for other parties has arisen in the context of whether a national fraternity is liable for sexual assault perpetrated by one of its members. In Brown v. Delta Tau Delta, 2015 ME 76, 118 A.3d 789 (2015), the Supreme Judicial Court concluded that the national fraternity organization had a premises-liability-based duty to its collegiate chapters’ social invitees, even though the national fraternity did not own or occupy the premises in question, because the assault was for-seeable, the national fraternity had authority to control its members and actually exercised that control, and because it had a sufficiently close relationship with its local chapters and individual members.
I cannot square the majority’s decision today with the Court’s recent decision in McDevitt v. Sportsman’s Warehouse, Inc., 151 Idaho 280, 255 P.3d 1166 (2011). In McDevitt, the plaintiff was injured when she slipped or tripped over a recessed irrigation box in a sidewalk outside of Sportsman’s Warehouse in Twin Falls. Id. at 281, 255 P.3d at 1167. The primary issue presented in the case was whether Sportsman’s could be held liable under a premises liability theory for the alleged dangerous condition. Id. at 283, 255 P.3d at 1169. In answering this question, this Court engaged in a two-step analysis. Id. at 284-86, 255 P.3d at 1170-73. First, it explained that a tenant “occupies” land. Id. This Court then analyzed whether the sidewalk was part of Sportsman’s leased premises and determined that it was not. Id. This Court’s analysis did not, however, stop there. Even though the Court concluded that Sportsman’s was not an “occupier” of the sidewalk (i.e., it did not fit within one of the categories of persons defined by the majority today), this Court then went on to analyze whether Sportsman’s controlled the sidewalk. Id. at 285-86, 255 P.3d at 1171-72. While the plaintiff in McDevitt was ultimately unsuccessful in demonstrating Sportsman’s control, all I am saying is that the majority should have applied the same legal analysis to this case.
In this case, the record contains evidence that the POA exercised some control over the interior of the apartment units, regardless of the content of the CC&R’s. FRPM’s President testified that POA handled “global issues” that affected apartment units complex wide, such as furnace filters and water heaters. These global issues were not restricted to the exterior of the units, as the CC&R’s seemed to contemplate. For instance, the POA ordered the FRPM to conduct carbon monoxide testing inside each unit every three months. They also issued two sets of procedures for handling carbon monoxide issues related to the faulty water heaters, including directing the installation of hard-wired carbon monoxide alarms inside the units. From my perspective, this evidence is sufficient to create a genuine issue of material fact about whether the POA exercised sufficient control to incur premises liability. For that reason I believe that summary judgment on this issue was not proper. The issue should have been submitted to a jury.